*In re* SANCHEZ

BATES v SANCHEZ

Docket No. 73795. Argued April 3, 1985 (Calendar No. 3).—Decided
    October 22, 1985.

Cheryl Ann Bates filed a petition in the Lenawee Probate Court,
    seeking termination of the parental rights of her ex-husband,
    Salvador Sanchez, in their son, Jeremy Lee Sanchez, and the
    approval of the adoption of Jeremy by her husband, Gary
    Bates. The court, C. Ralph Kohn, J., terminated Salvador
    Sanchez' parental rights, entered an order of adoption, and
    denied Sanchez' request for appointment of appellate counsel.
    The respondent filed a complaint for superintending control in
    the Lenawee Circuit Court to compel the probate court to
    appoint appellate counsel. The court, Kenneth B. Glaser, Jr., J.,
    dismissed the complaint, holding that the respondent's applica-
    tion must be made to the Court of Appeals. The Court of
    Appeals, BRONSON, P.J., and BEASLEY and CYNAR, JJ., affirmed,
    holding that the respondent had no right to appointment of
    appellate counsel, and remanded the case to the probate court
    for a determination of whether appellate counsel should be
    appointed (Docket No. 74116.) The probate court thereafter
    denied appointment of appellate counsel. The respondent ap-
    peals.

   In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices LEVIN and CAVANAGH, the Supreme
Court *held:*

   A probate court, in a case which could result in nonconsen-
sual termination of the parental rights of an indigent noncusto-
dial parent, may appoint counsel to assist the parent in contest-
ing the termination; where such appointment is made in the
trial court, and appeal is taken, the proper exercise of discre-
tion requires appointment of counsel on appeal absent a change
in circumstances identified by the court which justifies denial.

   1. Termination of parental rights under the stepparent adop-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Adoption § 23 *et seq.*

Right of indigent parent to appointed counsel in proceeding for
    involuntary termination of parental rights. 80 ALR3d 1141.

tion provisions of the Adoption Code are involuntary. Where the rights of a noncustodial parent are involved, termination is based on fault. A termination of parental rights is both total and irrevocable. It leaves the parent with no right to visit or communicate with the child, to participate in, or even to know about, any important decisions affecting the child's religious, educational, emotional, or physical development.

2. The Adoption Code and the Michigan Court Rules reflect a dual concern for procedural fairness to a noncustodial parent and for prompt proceedings to safeguard and promote the best interests of each child in need of adoption. The balancing of any conflict between the concerns is best left to the trial court. Thus the probate court may appoint counsel for a nonconsenting noncustodial parent in proceedings brought under the stepparent adoption provisions of the Adoption Code. In exercising its discretion, the trial court must be guided by the principle of assuring the nonconsenting parent the ability to present a case effectively and should consider such factors as the relative strength of the adversaries and the presence or absence of legal, factual, procedural, or evidentiary complexity.

3. Where the court has determined that appointed counsel is necessary to protect the noncustodial parent's interests at the termination proceedings, counsel should also be appointed on appeal, absent some change in circumstances, identified by the court, which would justify denial of appellate counsel. In this case, the refusal of the trial court to appoint appellate counsel on appeal was an abuse of discretion. The court did not consider the factors required to determine whether such an appointment was warranted.

Reversed and remanded.

Justice RILEY, joined by Justices RYAN and BRICKLEY, dissenting, stated that because no right to appointed appellate counsel for an indigent noncustodial parent in a stepparent adoption proceeding is granted by statute or applicable court rule, the issue must be decided on the basis of constitutional law.

OPINION OF THE COURT

1. ADOPTION — PROBATE COURT — TERMINATION OF PARENTAL RIGHTS — APPOINTMENT OF COUNSEL — APPEAL.

A probate court, in a case which could result in nonconsensual termination of the parental rights of an indigent noncustodial parent, may appoint counsel to assist the parent in contesting the termination; where such appointment is made in the trial court, and appeal is taken, appointment of counsel on appeal is required unless the trial court has articulated a change in

circumstances which justifies the denial (MCL 710.51[6]; MSA 27.3178[555.51][6]).

2. ADOPTION — PROBATE COURT — TERMINATION OF PARENTAL RIGHTS — APPOINTMENT OF COUNSEL.

Because the balancing of any conflict between policy concerns reflected in the provisions of the Adoption Code and the court rules pertaining to termination of parental rights is best left to the probate court, the court may appoint counsel for a nonconsenting noncustodial parent in proceedings brought under the stepparent adoption provisions of the Adoption Code; in exercising its discretion, the trial court must be guided by the principle of assuring the nonconsenting parent the ability to present a case effectively and should consider such factors as the relative strength of the adversaries and the presence or absence of legal, factual, procedural, or evidentiary complexity (MCL 710.21a[b], 710.36[7], 710.51[2]; MSA 27.3178[555.21a][b], 27.3178[555.36][7], 27.3178[555.51][2]; MCR 750, 802).

National Lawyers Guild, Ann Arbor Chapter (by *Stuart B. Lev*) and Legal Services of Southeastern Michigan (by *Robert F. Gillett* and *Martha D. Finn*) for the respondent.

Amicus Curiae:

*Scott Bassett* for the University of Michigan Law School, Child Advocacy Law Clinic.

BOYLE, J. The issue in this case is whether an indigent noncustodial parent is entitled to assigned counsel on the first appeal as of right from a probate court order terminating parental rights under the stepparent adoption provisions of the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6).

We hold that under the Probate Court Rules and the residuary authority of the Juvenile Court Rules, in cases which may result in nonconsensual termination of the parental rights of a noncustodial parent under the stepparent adoption provisions of the Michigan Adoption Code, MCL

710.51(6); MSA 27.3178(555.51)(6), the probate court has discretionary authority to appoint counsel to assist an indigent noncustodial parent in contesting the termination of parental rights. When that discretion has been exercised in the trial court, and the probate judge has determined that counsel is required to protect the rights of the indigent noncustodial parent at the initial hearing, if the right to appeal is exercised, absent some change in circumstances the proper exercise of discretion requires appointment of counsel on appeal.

## FACTS AND PROCEDURAL HISTORY

Salvador Sanchez and his wife Cheryl Ann were divorced in 1977. Mr. Sanchez' ex-wife, who had been awarded custody of their one-year-old son Jeremy, married Gary Bates in 1980. In 1982 Gary and Cheryl Ann (Sanchez) Bates, through the Friend of the Court, sought Mr. Sanchez' consent to termination of his parental rights so that Mr. Bates could adopt Jeremy. Mr. Sanchez refused consent.[1] In 1983 the Bates petitioned the Lenawee County Probate Court to terminate Mr. Sanchez' parental rights pursuant to MCL 710.51(6); MSA

[1] "Dear Mr. Heffron,

"I am in receipt of your letter of February 24, 1982, concerning the proposed consensual adoption of my son, Jeremy.

"Please be advised, that while I am pleased Jeremy's stepfather has taken such an interest in the boy, I cannot consent to his adoption and termination of my parental rights.

"I love my son very much and he figures prominently in my future plans of further education and employment; once my debt to society has been paid.

"I thank you very much for your interest and regret I cannot be of assistance in this regard.

                              "Yours truly,


                              "Salvador Sanchez"

27.3178(555.51)(6), and to approve Mr. Bates' adoption of Jeremy. Mr. Sanchez appeared and opposed the petition. At a second hearing, the probate court appointed trial counsel for Mr. Sanchez.[2]

At the trial, held July 12, 1983, Salvador Sanchez and Cheryl Ann Bates were the only witnesses. The evidence showed that Mr. Sanchez had been indicted on federal charges in August, 1980, and imprisoned in a federal facility in Illinois from January 1981 until January 1983. He had last paid the court-ordered child support of $17 per week in July 1980. He had earned $1115 during his 24½ months of imprisonment,[3] and in the five months prior to trial his only income had been $65 per month in general assistance from the state. The evidence on visitation was conflicting, Mrs. Bates testifying that Mr. Sanchez had last visited with his son in June 1978, and Mr. Sanchez testifying that his last visit had been in August 1980.

The Adoption Code provides:

If . . . the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

[2] The probate judge informed Mr. Sanchez that he had no right to appointed counsel at the first hearing on June 13, 1983. When Mr. Sanchez appeared without counsel at the second hearing on June 28, 1983, and reiterated his inability to retain counsel due to indigency, the probate judge appointed trial counsel for him because "the Court rule provides that counsel shall be provided if a defendant is indigent in all cases where the termination of parental rights is involved." The judge was apparently referring to JCR 1969, 6.3(A)(2)(b) (current version MCR 5.906[C]).

[3] This is an average of $10.50 per week, although, in his brief *in propria persona* in the Court of Appeals, Mr. Sanchez wrote that "I only made $12.50 and later $15.00 per week while I was incarcerated." See also n 6.

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6); MSA 27.3178(555.51)(6):]

The court found that Mr. Sanchez had not visited Jeremy since June 1978. Judge Kohn further found:

It's clear that the divorce decree provided for a support payment of $17.00 per week and the Court finds that the last money paid on that decree was in July of 1980 . . . . And presently I find to be a fact, that he has no job. That he has no income. That he does not and could not even provide for the child at the present time . . . . The statutes provide that if you fail to substantially comply with the Court order for a period of two years or more before filing the petition for adoption, parental rights can be terminated. I find that position exists. As meager as the income was in prison, it certainly would not be beyond the father who was concerned with his son's welfare to send some token to the mother for the child's benefit.

On the basis of these findings, the court terminated Mr. Sanchez' parental rights, and immediately thereafter entered an order of adoption.[4]

---

[4] *Cf.* MCL 710.56(2); MSA 27.3178(555.56)(2).

A number of legal proceedings followed.[5] Mr. Sanchez twice requested the probate court to appoint appellate counsel for him; both requests were denied. He filed a claim of appeal and brief *in propria persona* in the Court of Appeals,[6] which

[5] Mr. Sanchez, represented by Legal Services of Southeastern Michigan, filed a petition for rehearing which was denied, as well as a complaint for superintending control in the circuit court, seeking an order requiring the probate court to appoint appellate counsel for him. The circuit court, commenting that "[t]his court is inclined to rule that the underlying reasons for the holding in *Reist* [v *Bay Circuit Judge,* 396 Mich 326; 241 NW2d 55 (1976)] dictate that appointed appellate counsel for indigents whose parental rights have been *involuntarily* severed is required, regardless of the statute under which those rights are severed," dismissed the case on jurisdictional grounds. Legal Services, on behalf of Mr. Sanchez, appealed this dismissal to the Court of Appeals, which dismissed the appeal for lack of jurisdiction on June 18, 1984, and later denied rehearing. The dismissal was "without prejudice to appellant pursuing the question of the appointment of appellate counsel in Docket No. 74116 . . . ." (Mr. Sanchez' claim of appeal *in propria persona.*)

[6] "STATEMENT OF FACTS: The probate judge of Lenawee County, Judge C. Ralph Kohn terminated my parental rights to my son Jeremy Lee Sanchez on July 12, 1983. The hearing was because my former wife wanted her husband to adopt my son. I testified and my wife testified at the hearing. I was incarcerated at Marion Federal Penitentiary in Marion, Illinois for 24 and one half months beginning in January of 1981. The Judge said I hadn't visited my son since June of 1978 even though I saw him in August of 1980. The Judge also said I didn't pay my support payments of $17.00 each week for my son for two years even though I only made $12.50 and later $15.00 per week while I was incarcerated. Also the Judge would not give me an attorney for my appeal even though I am indigent and he had given me one for the hearing. Mr. Crudder represented me at the hearing although he did not do any research for my case. He didn't introduce a photograph showing me and my son together in 1980. My only income is $65.00 from the state but the Judge didn't appoint an attorney for my appeal anyway.

I think the Probate Court should have given me a lawyer to help me on my appeal. The Supreme Court said in the *Reist* case [n 5 *supra*] that an indigent has a right to a lawyer when the Probate Court cuts off his right to his child. The Probate Judge gave me a lawyer for my hearing and I don't see why he didn't give me one to appeal. I would like this Court to give me a lawyer for my appeal and to let my lawyer write a supplemental brief.

The Probate Court made a mistake when it terminated my rights to my child. I saw my boy in 1980; there is a photograph of us then, but Mr. Crudder did not submit it to the Probate Court. He didn't know my case at all. I would have seen my son if I could, but I was in prison. I did not abandon my son—I was unable to see him. The

is being held in abeyance pending resolution of the appeal of the denial of appellate counsel. In an order issued February 17, 1984, the Court of Appeals held that Mr. Sanchez has "no right to the appointment of counsel, *In re Kenneth Jackson, Jr,* 115 Mich App 40, 50-51; [320 NW2d 285] (1982)."[7] This Court granted leave to appeal on September 26, 1984. 419 Mich 934 (1984).

I

We recognize that "[c]ases involving the involuntary, permanent termination of parental rights are unique," *State ex rel Heller v Miller,* 61 Ohio St 2d 6, 13; 399 NE2d 66 (1980), in the kind, the degree, and the severity of the deprivation they inflict. Unquestionably, "[t]hese are proceedings involving traditions, emotions and responsibilities which give them a unique cast," *Reist v Bay*

Probate Court was wrong when it said I made no effort to see my boy for more than two years.

A big mistake was made by the Probate Judge when he said that I could have made my support payments of $17.00 each week. I only made $1,100.00 during the whole time I was in prison, 24½ months. That is a lot less than $17.00 for each week. My weekly pay was between $12.50 and $15.00 per week. With the money I did get I had to buy personal things at the prison store. You can't get by in prison without money for the prison store.

When I was working on my case in prison I was classified as an indigent under the Freedom of Information Act. I got the papers I needed for my case free because I was an indigent. I would have paid my $17.00 support each week if I had money but I couldn't. The Probate Judge made a mistake when he said I could.

I ask this Court of Appeals to reverse the Probate Court and restore my right to my child or give me a lawyer to write a supplemental brief for me."

[7] However, the Court of Appeals remanded the case to the Probate Court "for the purpose of exercising that court's discretion in determining whether counsel should be appointed to represent respondent-appellant pursuant to JCR 1969, 6.3(A)(2)(b)." The Probate Court held that JCR 1969, 6.3(A)(2)(b) applies only to Juvenile Code proceedings, and that under *In re Jackson,* 115 Mich App 40; 320 NW2d 285 (1982), the rule does not apply in proceedings brought under the Adoption Code.

*Circuit Judge,* 396 Mich 326, 354; 241 NW2d 55 (1976) (opinion of COLEMAN, J.).

A termination of parental rights is both total and irrevocable. Unlike other custody proceedings, it leaves the parent with no right to visit or communicate with the child, to participate in, or even to know about, any important decision affecting the child's religious, educational, emotional, or physical development. It is hardly surprising that this forced dissolution of the parent-child relationship has been recognized as a punitive sanction by courts, Congress, and commentators. [*Lassiter v Dep't of Social Services,* 452 US 18, 39; 101 S Ct 2153; 68 L Ed 2d 640 (1981) (Blackmun, J., *dissenting*). Citations omitted.]

While acknowledging the importance of the right involved, our disposition of this case makes it unnecessary to decide whether the Michigan Constitution requires appointment of counsel in all stepparent adoption proceedings.[8] *Taylor v Auditor General,* 360 Mich 146, 154; 103 NW2d 769 (1960).

## II

The Court of Appeals, as well as the probate court, based its holding that Mr. Sanchez has no right to appellate counsel on *In re Jackson,* 115

[8] Although Michigan precedents do not presume that appointed counsel is required only if physical liberty is at stake, *cf. Lassiter,* p 27, we are unable to conclude that the opposite is true. *Cf. In re Jay,* 150 Cal App 3d 251, 262; 197 Cal Rptr 672 (1983).

Thus, while this Court has construed Const 1963, art 1, § 17, to require the appointment of counsel for an indigent defendant in a paternity action, *Artibee v Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976), a majority was unable to agree on the doctrinal foundation for appointment of counsel on appeal by an indigent parent from an order of termination following a finding of neglect. *Reist, supra;* see also *Sword v Sword,* 399 Mich 367; 249 NW2d 88 (1976). (Appointment of attorney for an indigent in a civil nonsupport proceeding for contempt does not rise to the level of a constitutional right as a general rule.)

Mich App 40, 51; 320 NW2d 285 (1982). In that case, the Court of Appeals held:

> The primary distinction between a termination of parental rights under the juvenile code as opposed to termination under the Adoption Code is that the juvenile code proceeding is involuntarily brought by the state, whereas the Adoption Code proceeding is voluntarily initiated by the parent . . . . In view of the voluntary nature of a release for adoption, it appears unlikely that *Reist* is controlling since *Reist* is limited to involuntary termination proceedings.

Thus, by its own terms, *Jackson* does not apply to involuntary terminations of parental rights and is not controlling. Therefore we look to the court rules and statutes for resolution of the issue before us.

The Juvenile Court Rules make a specific distinction as to when appointment of counsel is mandatory and when it is merely discretionary. MCR 5.906(C)(1)(b) provides:

> Unless . . . waived . . . , an attorney *must* be appointed on the court's own initiative to represent the parent, guardian, or custodian of a child *charged with an offense against the child at a hearing which may involve termination* of that person's rights, when legal aid or public defender assistance is not available and the person is financially unable to employ an attorney. [Emphasis added.]

In all other cases, the same rule goes on to state that

> [t]he court may, on request, when legal aid or public defender assistance is not available and the individual is financially unable to employ an attor-

ney, appoint an attorney to represent the person at other hearings conducted under provisions of the juvenile code or these rules.

Terminations of parental rights pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6), like terminations under the Juvenile Code, are involuntary. Where the right involved is that of a noncustodial parent, a father who has acknowledged paternity or a putative father who has established a custodial or support relationship prior to the notice of hearing, terminations of parental rights under the Adoption Code, like those of the Juvenile Code, are based on fault. The rights may be terminated only after the court finds that the parent has failed or neglected to support and have contact with the child for two years or more during which time the parent had the ability to do so.[9]

At the time the Juvenile Court Rules were initially adopted, parental rights could be involuntarily terminated only under the Juvenile Code. Involuntary terminations became possible under the Adoption Code in 1981, when MCL 710.51(5); MSA 27.3178(555.51)(5) was enacted. 1980 PA 590, immediately effective January 26, 1981.

[9] The grounds provided for an involuntary termination of parental rights in MCL 710.51(6); MSA 27.3178(555.51)(6) are similar to the grounds provided in MCL 712A.19a(b); MSA 27.3178(598.19a)(b) which provides that the court

"may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

* * *

"(b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communicate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian."

The Michigan Court Rules, effective March 1, 1985, do not deal with the question of counsel in involuntary termination proceedings under the Adoption Code. However, the policies of both the Adoption Code and the rules reflect dual concerns for procedural fairness to noncustodial parents and for prompt proceedings to safeguard and promote the best interests of adoptees. These dual concerns are expressly recognized in the stated statutory purposes of the Adoption Code, which are:

> (a) To provide that each adoptee in this state who needs adoption services receives those services.
> (b) To provide procedures and services which will safeguard and promote the best interests of each adoptee in need of adoption and which will protect the rights of all parties concerned. If conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount.
> (c) To provide prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time. [MCL 710.21a; MSA 27.3178(555.21a).]

The concern for procedural fairness to noncustodial parents is also evidenced by the requirements for service, MCL 710.36(7); MSA 27.3178(555.36)(7), the requirement for a hearing to determine whether there have been reasonable attempts to identify or locate the father, MCR 5.752, and the provisions for extension of time after receipt of the report of investigation where necessary to hold a hearing, MCL 710.51(2); MSA 27.3178(555.51)(2). The rules further provide for an appeal on "a written transcript" or on a "settled and agreed" upon record. MCR 5.802. Further, the rules relating to adoption themselves provide: "Except as

modified by [the more specific provisions of] MCR 5.751-5.755, adoption proceedings are governed by the rules generally applicable to probate proceedings." MCR 5.750.

The concern for prompt resolution of matters related to adoption proceedings is also evidenced in other sections of the code which provide for court docket priority, MCL 710.25(1); MSA 27.3178(555.25)(1), limit the availability of adjournment or continuance, MCL 710.25(2); MSA 27.3178(555.25)(2), and provide for priority on appeal, MCL 710.65(3); MSA 27.3178(555.65)(3).

We conclude that the proper balancing of the potential for conflict between these dual concerns for procedural fairness to the noncustodial parent and for prompt proceedings to "safeguard and promote the best interests of each adoptee in need of adoption . . ." MCL 710.21a(b); MSA 27.3178(555.21a)(b) is best left for resolution to the discretion of those who have primary responsibility for application of the code, the trial judiciary.

As Justice COLEMAN recognized in *Reist v Bay Circuit Judge, supra,* p 359, these rules are judicially created and their scope can properly be provided by interpretation by this Court.

> [T]he living law must reflect change. When constitutions, statutes and rules are drafted, they cannot hope to provide individually for all developments. [*Reist, supra,* p 354.]

We find that the probate court is authorized to appoint counsel for a nonconsenting noncustodial parent in proceedings brought pursuant to § 51(6) of the Adoption Code. In exercising such discretion, the trial court will be guided by the principle of assuring the nonconsenting parent the ability to present a case properly, measured in the particu-

lar case by factors such as the relative strength of the adversaries and the presence or absence of legal, factual, procedural, or evidentiary complexity. See, *e.g., Cleaver v Wilcox,* 499 F2d 940, 945 (CA 9, 1974).

We further find that where the trial court has determined that trial counsel is necessary to protect the noncustodial parent's interests at the termination proceedings, counsel should also be appointed on appeal, absent some change in circumstances, identified by the trial court, which would justify denial of appellate counsel.

As Justice LEVIN noted in *Reist, supra,* p 348:

> The issues on appeal from an order terminating parental rights are generally both factual and legal. Prosecution of an appeal requires a knowledge and understanding of the court rules, statutes and judicial decisions. The procedures for prosecuting an appeal are intricate and, to one not experienced in appellate work, complex.

Applying these principles we find that the refusal of the trial court to appoint appellate counsel in this case was an abuse of discretion. The trial court did not consider the factors that should have been evaluated to determine whether legal representation was required in order to make the appellant's right to appeal meaningful. We reverse the decision of the Court of Appeals and remand this case to that Court with directions for appointment of appellate counsel.[10]

---

[10] Ordinarily, this matter would be remanded to the trial court with directions for consideration of these factors or for enunciation on the record of the change in circumstances justifying denial of appellate counsel. However, our disposition of this case is based upon the stated interest of the Adoption Code in prompt resolution of these matters, MCL 710.21a; MSA 27.3178(555.21a), and our recognition that an appeal in this case is now pending. MCR 7.316(A)(7).

WILLIAMS, C.J., and LEVIN and CAVANAGH, JJ., concurred with BOYLE, J.

RILEY, J. (*dissenting*). The issue presented is whether an indigent noncustodial parent has the right to appointed counsel on appeal as of right from a probate court order terminating parental rights pursuant to the stepparent adoption provision of the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6). In its order granting leave to appeal, this Court directed the parties to brief

> whether in a case involving the involuntary termination of parental rights under the Michigan Adoption Code an indigent parent has the right to appointed appellate counsel guaranteed by the state or the federal constitution and whether counsel in such a case may be appointed pursuant to JCR 6.3(A)(2)(b).[1]

A right to appointed counsel is not mentioned in the Adoption Code or in the Probate Court Rules applicable to adoption proceedings. The appointment of counsel provision in the Juvenile Court Rules, JCR 1969, 6.3(A)(2)(b), does not apply to Adoption Code proceedings. The Juvenile Court Rules apply to proceedings in the juvenile division of the probate court, JCR 1969, 1.2.[2] Stepparent adoption proceedings under the Adoption Code are governed by the Probate Court Rules, PCR 11.2.[3]

---

[1] *In re Sanchez*, 419 Mich 934 (1984). Briefs were submitted by appellant Sanchez, and amicus curiae University of Michigan Law School Child Advocacy Law Clinic. No brief was submitted by appellee.

[2] JCR 1969, 1.2 reads:

".2 Scope. The Procedure in the Juvenile Division of the Probate Court shall be governed by these rules." See also MCR 5.901(A).

[3] PCR 11.2 reads:

"These rules govern the practice in the probate courts in all

The Michigan Court Rules, effective March 1, 1985, have continued this distinction. MCR 5.750 states:

> Except as modified by MCR 5.751-5.755 [the adoption subchapter], adoption proceedings are governed by the rules generally applicable to probate proceedings.

The "rules generally applicable to probate proceedings," referred to in MCR 5.750, do not include the specific provisions applicable to proceedings in the juvenile division of the probate court. A separate subchapter, 5.900, covers proceedings in the juvenile division.[4]

The mandatory and discretionary appointment of counsel provisions of JCR 1969, 6.3(A)(2)(b), are applicable only to hearings conducted under the Juvenile Code or the Juvenile Court Rules.[5] Because of the absence of a statutory provision or applicable court rule authorizing the appointment of counsel in stepparent adoption proceedings, determination of the issue presented in this appeal depends on whether the appointment of appellate counsel is required by either the United States or Michigan Constitution.

The majority sidesteps this constitutional ques-

proceedings other than proceedings in the juvenile division of the probate court."

See also PCR 750; MCR 5.750.

[4] See MCR 5.001, and the note thereto. See also MCR 5.901(A).

[5] The phrase "these rules" in the discretionary appointment of counsel provision of JCR 1969, 6.3(A)(2)(b), can only be interpreted as referring to the Juvenile Court Rules.

Amicus curiae University of Michigan Law School Child Advocacy Law Clinic, correctly asserts that JCR 6.3(A)(2)(b) cannot serve as authority for the appointment of trial and appellate counsel in stepparent adoption proceedings, and that "[t]he authority for appointment of trial and appellate counsel to indigent parents in stepparent adoption proceedings must come directly from . . . the United States and Michigan Constitutions."

tion, stating: "[O]ur disposition of this case makes it unnecessary to decide whether the Michigan Constitution requires appointment of counsel in all stepparent adoption proceedings."[6]

Instead, in reversing the decision below and ordering the appointment of appellate counsel, the majority analogizes terminations of parental rights pursuant to the stepparent adoption provision of the Adoption Code to terminations of parental rights under the Juvenile Code. The majority determines, however, that unlike in termination proceedings pursuant to the Juvenile Code, appointment of counsel in termination proceedings pursuant to the Adoption Code is *discretionary* not mandatory. In making this determination, the majority notes the policy concerns for procedural fairness to noncustodial parents and for prompt proceedings to promote the best interests of adoptees in need of adoption, reflected in the Adoption Code and rules.

I am persuaded that the majority's reasoning is tenuous and does not support its decision. First, the termination of parental rights pursuant to § 51(6) of the Adoption Code is both substantively and procedurally distinguishable from terminations of parental rights under the Juvenile Code.[7]

---

[6] Although the majority does not directly decide the constitutional issue, it must be noted that its decision in this case—that appointment of counsel is *discretionary* and thus *not required* in all cases—can only be supported, constitutionally, if the Michigan Constitution does not require appointment of counsel in all stepparent adoption proceedings. While the court rules may be interpreted as affording rights that are not required by the constitution, they may not be interpreted as denying rights that are constitutionally required.

[7] There are fundamental differences in nature between proceedings brought by the state to terminate parental rights under the Juvenile Code and proceedings initiated by a stepparent (a private individual), whose spouse is the custodial parent of the prospective adoptee, under the Adoption Code. Proceedings brought by the state in the juvenile division of the probate court, for example, must first meet the jurisdictional requirements set forth in MCL 712A.2(b); MSA

Second, the potential for conflict between the policy concerns for procedural fairness to the noncustodial parent and for prompt proceedings to promote the best interests of adoptees in need of adoption is diminished in stepparent adoption proceedings.[8]

---

27.3178(598.2)(b). The termination of parental rights under the Juvenile Code may not be considered until the court's jurisdiction has been established. See *In re Taurus F,* 415 Mich 512; 330 NW2d 33 (1982); *In re Baby X,* 97 Mich App 111; 293 NW2d 736 (1980); *In re Griffin,* 88 Mich App 184; 277 NW2d 179 (1979). With regard to proceedings involving the termination of parental rights, the juvenile division of the probate court has jurisdiction in proceedings concerning any child under seventeen years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as provided by law, medical, surgical, or other care necessary for his or her health, or morals, or who is deprived of emotional well-being, or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship; [or]

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for such child to live in . . . ." MCL 712A.2(b); MSA 27.3178(598.2)(b).

Furthermore, the substantive provisions applicable to the dispositional phase of proceedings to terminate parental rights under the Juvenile Code differ, both in terms of the required findings and in nature, from terminations in stepparent adoption proceedings. See MCL 712A.19a(b); MSA 27.3178(598.19a)(b). *Cf.* MCL 710.51(6); MSA 27.3178(555.51)(6).

[8] Unlike in other adoption proceedings, when the petitioner for adoption is married to the parent having legal custody of the child, the child is not a ward of the court before, nor after, the termination of the rights of the noncustodial parent. MCL 710.51(3); MSA 27.3178(555.51)(3). The policy concern for prompt proceedings to assure that adoptees are free for adoptive placement, therefore, is not implicated in stepparent adoption proceedings.

I agree that the best interests of an adoptee may conflict with the interests of a noncustodial parent in stepparent adoption proceedings. But, this potential for conflict is not any greater than in terminations pursuant to the Juvenile Code.

It may be that public policy favors a discretionary appointment-of-counsel rule for stepparent adoption proceedings, but not for the reasons asserted by the majority. More compelling reasons supporting a discretionary appointment-of-counsel rule, as opposed to the mandatory rule in Juvenile Code termination proceedings, concern the more private nature of stepparent adoption proceedings under the Adoption Code. In any event, the appropriate method by which to promulgate

Relying on the Court's authority to interpret the court rules, the majority holds that an indigent noncustodial parent is entitled to assigned appellate counsel for an appeal as of right from a probate court order terminating parental rights under the Adoption Code in cases in which trial counsel was provided, absent "some change in circumstances." In reaching this holding, the majority decides that the probate court has discretionary authority, "under the Probate Court Rules and the residuary authority of the Juvenile Court Rules," to appoint trial counsel in cases under the stepparent adoption provisions of the Adoption Code. The majority's effort to base its decision in this appeal on the Court's authority to interpret the court rules is strained; the Court cannot interpret a court rule that does not exist. *Cf. Reist v Bay Circuit Judge*, 396 Mich 326; 241 NW2d 55 (1976) (opinion of COLEMAN, J.). The majority's decision is, essentially, administrative rule-making in an opinion. Whether the Adoption Code or the court rules applicable to proceedings thereunder should be amended is not the issue.

Because no right to appointed appellate counsel is granted by statute or applicable court rule, the constitutional issue is controlling in this case. Therefore, I respectfully dissent.

RYAN and BRICKLEY, JJ., concurred with RILEY, J.

such a rule is not through the adjudication of this particular legal dispute by asserting the power of judicial review.