155 Mich. App. 108 (1986)
399 N.W.2d 459
In re FERNANDEZ
KLEINHEKSEL
v.
FERNANDEZ-ROQUE
Docket No. 88317.
Michigan Court of Appeals.
Decided October 6, 1986.
William A. Van Eck, for petitioners.
Carlos Fernandez-Roque, in propria persona, for respondent.
Before: R.B. BURNS, P.J., and R.M. MAHER and F.D. BROUILLETTE,[*] JJ.
R.B. BURNS, P.J.
This appeal arises out of the order terminating respondent's parental rights during proceedings for the adoption of a minor child by his stepfather, petitioner Randall Kleinheksel, entered over the objection of respondent father. Following various hearings, the trial court terminated the parental rights of respondent, the noncustodial father of the minor child and former husband of petitioner Sheryl Kleinheksel. The trial court stayed execution of the order and suspended further proceedings pending appeal. Respondent now brings this appeal and we reverse.
The child's parents were married in 1969 and divorced in 1974 in Florida. Carlos was born in 1971. The mother remarried in 1980. Respondent *110 was incarcerated in 1981 in the Federal Correctional Institution in Talladega, Alabama. In February, 1985, the mother and her husband commenced adoption proceedings in the Ottawa Probate Court. That petition stated that respondent's whereabouts was unknown. However, at a February, 1985, hearing to terminate respondent's parental rights, petitioner mother acknowledged that she had reason to believe that respondent was under the jurisdiction of the federal corrections system. The trial court then suspended the proceedings so respondent could be served with process.
Respondent was located and various documents were sent to him in prison by ordinary first-class mail. Respondent replied by objecting to the adoption and requested an adjournment so he could obtain counsel and prepare a defense. Respondent also complained that the service of process was deficient and requested a dismissal. The trial court conducted a hearing on May 6, 1985, and denied the motion to dismiss, but granted an adjournment until July 22, 1985. At the July hearing, at which respondent was absent and not represented by counsel, the trial judge again took petitioner mother's testimony and indicated that he would terminate respondent's parental rights and enter an adoption order if the minor child consented, which the child subsequently did.
The first issue for our consideration is also the dispositive issue: Did the trial court err in not appointing counsel to represent respondent? We answer this in the affirmative. While the parties frame this in terms of federal and state constitutional considerations, we decline to apply either constitution. Rather, we believe that the individual circumstances of this case allow resolution of the right to counsel issue by reference to court rules *111 and Supreme Court precedent. In In re Sanchez, 422 Mich 758; 375 NW2d 353 (1985), the Supreme Court considered the question of the appointment of appellate counsel for an indigent noncustodial parent in a stepparent adoption case brought under § 51(6) of the Adoption Code.[1]
The Court concluded that appellate counsel should be appointed, absent a change in circumstances, whenever the trial court had determined it was necessary to appoint trial counsel. 422 Mich 771. The Court provided guidelines for the appointment of trial counsel:
We find that the probate court is authorized to appoint counsel for a nonconsenting noncustodial parent in proceedings brought pursuant to § 51(6) of the Adoption Code. In exercising such discretion, the trial court will be guided by the principle of assuring the nonconsenting parent the ability to present a case properly, measured in the particular case by factors such as the relative strength of the adversaries and the presence or absence of legal, factual, procedural, or evidentiary complexity. See, e.g., Cleaver v Wilcox, 499 F2d 940, 945 (CA 9, 1974). [422 Mich 770-771.]
While we acknowledge that in this case that respondent never formally requested the appointment of trial counsel,[2] we believe that, under the circumstances of this case, the probate court should nevertheless have appointed counsel. In his first response to the adoption petition, respondent indicated that he desired to retain local counsel. Next, in an unsuccessful motion to obtain a writ of habeas corpus ad testificandum, respondent clearly *112 stated that he was unable to pay for legal representation. Respondent's indigent status was recognized by the trial court by the granting of his motion to proceed in forma pauperis. While we are not willing at this point to create a rule which would require that probate courts must, in all cases, consider sua sponte the appointment of trial counsel in proceedings under the Adoption Code involving the termination of parental rights, we conclude that, given respondent's stated desire for counsel and his lack of funds, coupled with his inability to freely appear before the probate court and attend to the litigation, the trial court should have considered respondent's communications as a request for the appointment of trial counsel. This is particularly true in view of the trial court's acknowledgment of the complexities of this case.
Turning to the Sanchez factors, we conclude that this case presents an instance in which trial counsel should have been appointed. In this case, respondent sought to challenge both the validity of the service of process and the court's subject-matter jurisdiction in light of the jurisdiction of the Florida courts arising from the prior divorce. The need for counsel is also demonstrated by respondent's unsuccessful attempt to obtain the above-mentioned writ of habeas corpus to appear for the trial court proceedings. Counsel might well have been able to secure respondent's presence at the termination hearing.
The trial court, at the May 6, 1985, hearing also noted the necessity of counsel relative to potential constitutional issues:
[The Court:] There may or may not be some constitutional problems with Michigan Statute for terminating non-custodial parents' rights. I think there may be, but 

Mr. Van Eck [Counsel for Petitioners]: We just *113 hope that nobody decides to wager [sic] that battle in this case.

The Court: Well he's going to have to get some representation to wage it somehow. And he's going to have to appeal my decision unless he can persuade me it's unconstitutional.
Moreover, a review of the February 4, 1985, hearing, conducted before respondent even received notice of the proceedings, discloses comments by the trial court which lend further support to the conclusion that respondent needed to be represented by an advocate to protect his rights:

The Court: The record should indicate that based on the evidence I've heard, there certainly is a basis for terminating a non-custodial parent's rights.
* * *

Mr. Van Eck: Then I can  the two orders the Court needs then is the Order Terminating the Parental Rights of the father. And then also, the Order for Adoption which is the normal probate order form would be; the two orders, I would anticipate to be signed?

The Court: Well let's see once, if you  this hasn't been stamped yet has it? Well let's do something that isn't quite kosher. What [sic] don't you check, we request that the adoption be completed immediately. Well wait a minute, you've got to have a reason for that. Okay, what will happen once I terminate the non-custodial parent's rights as I sign an order ordering the Department of Social Services to make a home investigation, then you will have to file a motion for immediate confirmation whenever that's done.
And I'm sure that the recommendation will be that it be immediately confirmed given the four year marriage or five year marriage and remarriage and so forth.
* * *

*114 The Court: All right so really the only thing we've got to make an effort to do, is to notify the father who I think there's a strong suspicion is somewhere with the federal penitentiary people somewhere.

The Witness [Petitioner-Mother]: Will his notification make any difference in the outcome of this, do you think?

The Court: Under Michigan law, he has a right to make some kind of an appearance here and request custody of the child, or even make a defense to termination of his rights, but he would have, in my opinion, a rather difficult time showing that the best interests of your child would be served by not terminating parental rights. Ten years is five times what the statute requires, and that seems to have some relevance on the best interests of the child or the vitality of trying to preserve whatever parental rights he thinks he has.
So no 

The Witness: So he either has to make an appearance or make a defense?

The Court: Well unfortunately, the statute says, I may terminate parental rights on a showing that there's been no support and no visitation for two years. But ultimately anything under the Adoption Code has to be determined on the best interests of the minor involved. So he could either come in and defend and say I've been paying support all along and I visited last month, you know, that kind of stuff.
Or even saying, yes, that's true, I haven't seen him in ten years make some pitch that it's in the best interests of the child not to terminate his parental rights. And that's where he would probably have some difficulty in this Court anyway.

Mr. Van Eck: It gives the Judge a basis to move on this.
It would thus appear that, before respondent *115 was even aware that the petition had been filed and could present a defense, the trial court had virtually concluded that the petition should be granted and proceeded to assure petitioners that there was little doubt about a speedy and favorable resolution of the matter. At this point, effective advocacy became essential to protect respondent's rights. Respondent certainly lacked the ability to provide that advocacy from a prison cell in Alabama.
Given the circumstances of this case, we conclude that the trial court should have exercised its discretion and the failure to do so constitutes error requiring reversal.
The order terminating respondent's parental rights is vacated. The case is remanded to the probate court for further proceedings consistent with this opinion. Jurisdiction is not retained. Costs to respondent.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCL 710.51(6); MSA 27.3178(555.51)(6).
[2] Respondent did request the appointment of appellate counsel. The trial court denied the request, citing Sanchez, based upon the nonappointment of trial counsel. Respondent appears before this Court in propria persona.