*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LSM, Minor.

UNPUBLISHED
July 27, 2023

No. 364895
Macomb Circuit Court
Family Division
LC No. 2022-000586-AD

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Before LSM's birth, respondent-father signed a form attesting that he is LSM's father and "deny[ing] any interest in the custody of the child." He also "g[a]ve up his right to notice" of the hearing to terminate his parental rights. Respondent now contends that he did not understand the form and that his parental rights were unconstitutionally terminated without notice and an opportunity to be heard. Respondent validly waived his rights. We affirm.

## I. BACKGROUND

Respondent and CML are the biological parents of LSM. They were never married. Respondent was incarcerated before LSM's birth and will remain in prison until at least 2031. During her pregnancy, CML decided to place the child for adoption. CML chose the child's adoptive parents and their attorney began making necessary legal arrangements.

Relevant to this appeal, counsel for the adoptive parents sent respondent a "notice to putative father and custody statement." This is a Supreme Court Administrative Office (SCAO) approved form (PCA 316) meant to comply with MCL 710.36 and MCL 710.37 of the Adoption Code and MCR 3.801. The form notified respondent that CML "intends to file a petition" relative to "an unborn child expected on or about 11/25/2022" and that "you are the father." It continued that CML "intends to sign a release or consent relinquishing her rights to the child." The form advised:

> The law provides that as a putative father, you have a right to request custody of the child. The law also provides that your failure to appear at the hearing on your petition shall constitute a denial of your interest in the custody of the child, which shall result in the court's termination of your parental rights to the child.

-1-

In the event respondent did "not want to request custody of the child," the form instructed respondent to fill out the embedded "custody statement of putative father" and send it to the adoptive parents' attorney. Respondent did so, checking a box indicating, "I voluntarily state: . . . I am the father of the child and deny any interest in the custody of the child." The next line provided, "I give up my right to notice of the time and place of hearing to identify the child's father and determine or terminate his parental rights." Respondent signed the form in front of a witness, "T. Duclo."[1]

The adoptive parents took custody of the child after her birth. With CML's consent, the court proceeded to terminate her parental rights. Armed with the signed custody statement, the court entered an ex parte order terminating respondent's rights without notifying respondent of the hearing. Respondent appeals from that order.

## II. ANALYSIS

Respondent failed to preserve his due process challenge by raising it below. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Therefore, our review is limited to plain error affecting respondent's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

Parents have "a fundamental liberty interest in the care, custody, and management of [their] child[ren]" that is protected by the due process clauses of the United States and Michigan Constitutions. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (quotation marks and citation omitted). "At its core, due process requires the opportunity to be heard at a meaningful time and in a meaningful manner." *In re BGP*, 320 Mich app 338, 343; 906 NW2d 228 (2017) (cleaned up).

The proceedings at issue were governed by provisions of the Michigan Adoption Code, MCL 710.21*et seq*. MCL 710.36(1) states:

> If a child is claimed to be born out of wedlock and the mother executes or proposes to execute a release or consent relinquishing her rights to the child or joins in a petition for adoption filed by her spouse, and the release or consent of the natural father cannot be obtained, the judge shall hold a hearing as soon as practical to determine whether the child was born out of wedlock, to determine the identity of the father, and to determine or terminate the rights of the father as provided in this section and [MCL 710.37 and MCL 710.90].

Notice of the hearing described in MCL 710.36(1) must be given to a "putative father who was not served a notice of intent to release or consent at least 30 days before the expected date of confinement," i.e., the mother's due date, "specified in the notice of intent to release or consent." MCL 710.36(3)(b).

---

[1] Respondent contends that T. Dulco was a fellow inmate and not a proper person to witness his signature. This claim is not supported by the record.

MCL 710.36(7) recognizes that a putative father may waive his right to notice of the hearing. MCR 3.801(A) also provides, "A waiver, affirmation, or disclaimer to be executed by the father of a child born out of wedlock may be executed any time after the conception of the child."

The trial court terminated respondent's parental rights under MCL 710.37(1)(a), which states:

> If the court has proof that the person whom it determines pursuant to [MCL 710.36] to be the father of the child was timely served with a notice of intent to release or consent pursuant to [MCL 710.34(1)] *or was served with or waived the notice of hearing required by [MCL 710.36(3)]*, the court may permanently terminate the rights of the putative father under any of the following circumstances:
>
> > (a) The putative father submits a verified affirmation of his paternity and a denial of his interest in custody of the child. [Emphasis added.]

This provision was met here. Respondent was served with a notice to putative father, affirmed that he is the child's father, and denied any interest in custody. He waived notice of the termination hearing.

Respondent now complains that he did not understand the form and was not provided counsel. He contends that he was under a significant amount of stress at the time due to his incarceration and that he did not know that he could request custody despite his incarceration. Respondent further asserts that he misunderstood the nature of the adoption pursued by the child's mother. Accordingly, he asserts that he did not voluntarily waive his rights.

"Waiver is the intentional relinquishment or abandonment of a known right[.]" *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019) (quotation marks and citation omitted). "[A] waiver must . . . be explicit, voluntary, and made in good faith. In order to ascertain whether a waiver exists, a court must determine if a reasonable person would have understood that he or she was waiving the interest in question." *Estate of Reed v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011) (quotation marks and citations omitted).

The "notice to putative father and custody statement" advised respondent that CML was pregnant with his child and intended to relinquish her rights to the child upon his or her birth. The notice indicated that respondent had a right to request custody of his child. Respondent read these statements, admitted paternity, and "voluntarily . . . den[ied] any interest in custody of the child." The notice specifically advised respondent that he ceded "his right to notice" of the post-birth hearings to identify the father and terminate his parental rights. The notice was clear and unambiguous; a reasonable person would understand that he would receive no further notice about the paternity and termination actions against him.

The absence of counsel did not render respondent's waiver involuntary. Unlike the court rules governing involuntary termination under the Juvenile Code, the rules governing involuntary termination under the Adoption Code do not provide for the appointment of counsel for an indigent

respondent. See MCR 3.800 *et seq*. The Supreme Court held in *In re Sanchez*, 422 Mich 758, 770-771; 375 NW2d 353 (1985), that a court has discretion to appoint counsel "for a nonconsenting noncustodial parent" facing termination in stepparent adoption proceedings under MCL 710.51(6) of the Adoption Code. Even were we to extend that reasoning to other involuntary terminations under the Adoption Code, respondent would not be entitled to relief. Respondent never requested counsel or attempted in any way to participate in these proceedings. Accordingly, the trial court had no reason to exercise its discretion in respondent's favor.

Respondent further claims that his affirmation of paternity was not "verified," and a DNA test or affidavit should have been required to verify his paternity for the purpose of MCL 710.37(1)(a). MCR 1.109(D)(3) states:

If a document is required or permitted to be verified, it may be verified by

(a) oath or affirmation of the party or of someone having knowledge of the facts stated; or

(b) except as to an affidavit, including the following signed and dated declaration:

"I declare under the penalties of perjury that this has been examined by me and that its contents are true to the best of my information, knowledge, and belief." Any requirement of law that a document filed with the probate court must be sworn may be also met by this declaration.

Respondent signed the custody statement, stating "I declare that this 'Custody Statement of Putative Father' has been examined by me and that its contents are true to the best of my information, knowledge, and belief." Respondent's affirmation of paternity was verified and neither a DNA test nor an affidavit were required.

Respondent validly waived his right to notice and a hearing and cannot now challenge the termination of his parental rights based on the absence of a notice and a hearing. As respondent waived his rights, we need not consider his claim that the trial court improperly failed to consider whether termination of his parental rights was in LSM's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood