# Order

Michigan Supreme Court
Lansing, Michigan

April 8, 2009

137362

_____

In re RICHARD HUDSON, DENNIS MORGAN
and MICHAEL MORGAN, Minors.

_____

DEPARTMENT OF HUMAN SERVICES,
       Petitioner-Appellant,

v

MELANIE MORGAN,
       Respondent-Appellee,
and

ANDREW TANNER,
       Respondent.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 137362
COA: 282765
Clinton CC Family Division:
  05-018269-NA

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we hereby AFFIRM the judgment of the Court of Appeals. For the reasons stated in the Court of Appeals judgment, the trial court committed clear error in finding that the Department of Human Services presented clear and convincing evidence in support of the statutory grounds for terminating the respondent-mother's parental rights. The trial court also committed plain error, *People v Carines*, 460 Mich 750, 763 (1999), in failing to adequately advise the respondent of her right to counsel throughout the proceedings, in failing to timely appoint counsel in violation of MCL 712A.17c(4) and (5), MCR 3.915(B)(1), MCR 3.965(B)(5), and MCR 3.974(B)(3)(a)(i), and in failing to advise the respondent that her plea could later be used in a proceeding to terminate parental rights in violation of MCR 3.917(B)(4). These statutory and court rule violations compounded the errors committed by the trial court in terminating the respondent's parental rights under the factors of MCL

712A.19b(3).  Accordingly, we REMAND this case to the trial court for proceedings not inconsistent with this order.

WEAVER, J. (*concurring in part*).

I concur in the order affirming the judgment of the Court of Appeals.  I write separately, as I did in *In re Rood,* 483 Mich ___, ___ (Docket No. 136849, decided April 2, 2009) (Weaver, J., concurring in part) because I agree with Justice Young, *post* at __, that as there were numerous state law violations requiring reversal of the termination order, this Court should not consider additional constitutional issues.

CORRIGAN, J. (*concurring*).

I concur in the Court's order affirming the judgment of the Court of Appeals.  I write separately to address the due process problems that pervaded these proceedings because the trial court did not advise respondent of the consequences of her plea of admission, contrary to MCR 3.971(B)(4).  Also contrary to MCL 712A.17c, the court did not appoint counsel at respondent's first appearance.  Instead, the court waited until two weeks before the termination of parental rights trial to appoint counsel.  Without counsel to assist her, respondent never offered evidence in her own behalf during 10 hearings over two years.  In addition, respondent's plea of admission enabled the subsequent admission of hearsay evidence at the termination hearing.  Because the underlying plea was invalid, the state's termination case, which relied heavily on hearsay, was also tainted.  The combination of these errors deprived respondent of due process and affected her substantial rights.

I.  Basic Facts and Procedural History

These proceedings ultimately resulted in the termination of respondent's parental rights to her three children.  They were set in motion when the trial court took jurisdiction of the children after a September 2005 emergency preliminary hearing.  The court exercised jurisdiction on the basis of partial admissions by respondent and her husband, Michael Morgan (Morgan), of the allegations in a petition filed by the Department of Human Services (DHS).[1]  The allegations included a prior adjudication for neglect, deplorable housing conditions, failure to pick up the children from school, and drug use in the home.  After the court took jurisdiction of the children, it ordered respondent and Morgan to participate in DHS services and to comply with a court approved service plan by submitting to drug testing and psychological evaluations, among other things.

During the next two years, the trial court held ten dispositional and permanency planning hearings, including a January 2006 dispositional hearing, after which the court ordered the children removed from the home of respondent and Morgan pursuant to a

---

[1] Morgan is the father of respondent's two youngest children.  His parental rights and the parental rights of the oldest child's father were also terminated.  Neither father has appealed.

DHS petition. Respondent, who eventually separated from Morgan and began living with family members, was not represented by counsel at any of these hearings. No evidence was ever presented on her behalf. DHS witnesses testified over the course of several hearings that respondent was making an effort to work with the DHS. She showed improvements in some areas but had recurring problems. In particular, the DHS presented evidence that respondent failed one or two drug screenings during many reporting periods. She claimed to use Vicodin prescribed for chronic pain. She produced a prescription to explain some of the positive drug tests. DHS witnesses and the trial court expressed concern about respondent's continued use of narcotic pain medication. DHS witnesses also suggested that respondent struggled to maintain employment and was unable to find and afford housing adequate for three children.

The DHS filed its petition to terminate respondent's parental rights on November 7, 2007. The trial court first appointed counsel to represent respondent on November 16, 2007. Following trial on November 30, 2007, the trial court terminated respondent's parental rights, citing the statutory grounds for termination set forth in MCL 712A.19b(c)(i) (conditions leading to the adjudication continue to exist and there is no reasonable likelihood of rectification within a reasonable time); MCL 712A.19b(c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction and the parent has received recommendations and a reasonable opportunity to rectify those conditions but has failed to do so); MCL 712A.19b(g) (without regard to intent, the parent fails to provide proper care or custody and there is no reasonable expectation that she might do so within a reasonable time); and MCL 712A.19b(j) (there is a reasonable likelihood, based on the conduct or capacity of the parent, that the child will be harmed if returned to the home of the parent). The court also found that termination would not be contrary to the best interests of the children. MCL 712A.19b(5).[2]

Respondent appealed, arguing that her plea of admission at the preliminary hearing was invalid because the trial court had failed to advise her that the plea could be used as evidence in a later termination proceeding, and that she was denied due process by the trial court's failure to appoint counsel until 14 days before the termination trial. The Court of Appeals acknowledged that the trial court had failed to advise respondent that her plea could be used as evidence in a proceeding to terminate her parental rights, as required by MCR 3.971(B)(4), but found no plain error because the trial court relied on the testimony of DHS witnesses, rather than respondent's admissions at the preliminary

---

[2] At the time of the termination trial in this case, MCL 712.19b(5) provided:

> If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests.

hearing, to support the statutory grounds for termination. It also concluded that respondent's right to counsel had not been violated because respondent did not request counsel during the more than 24 months between the adjudication and the termination hearing. It added that although earlier appointment of counsel would have more fully protected respondent's constitutional right to counsel, a right explicitly recognized in *In re Powers*, 244 Mich App 111, 121 (2000), "the process afforded minimally satisfied the United States Constitution." Despite its rejection of respondent's arguments on appeal, the panel reversed the trial court's termination decision. Raising these issues sua sponte, it concluded that the trial court clearly erred by finding sufficient evidence of the statutory bases for termination, and in finding that termination would not be contrary to the best interests of the children. *In re Hudson*, unpublished opinion per curiam of the Court of Appeals, issued August 26, 2008 (Docket No. 282765).

## II. Standard of Review

Unpreserved constitutional challenges are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764 (1999).

## III. Advice of Consequences of Plea and Right to Counsel

Under the Michigan Court Rules, the trial court may accept a parent's plea of admission or no contest to the original allegations in a DHS petition. MCR 3.971(A). Before accepting a plea, however, the court must advise the respondent on the record or in writing:

> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;
>
> (3) that, if the court accepts the plea, the respondent will give up the rights to
>
>> (a) trial by a judge or trial by a jury,
>>
>> (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
>>
>> (c) have witnesses against the respondent appear and testify under oath at trial,
>>
>> (d) cross-examine witnesses, and
>>
>> (e) have the court subpoena any witnesses the respondent believes could give testimony in respondent's favor;

> (4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent. [MCR 3.971(B).]

Moreover, the court "shall not accept a plea of admission or of no contest without satisfying itself that "the plea is knowingly, understandingly, and voluntarily made," MCR 3.971(C)(1), and "without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true," MCR 3.971(C)(2).

A respondent's right to an attorney in a child protective proceeding is statutory, court-rule based, and constitutional. MCL 712A.17c provides, in part:

> (4) In a proceeding under section 2(b) or (c) of this chapter,[3] the court shall advise the respondent at the respondent's first court appearance of all of the following:
>
>> (a) The right to an attorney at each stage of the proceeding.
>>
>> (b) The right to a court-appointed attorney if the respondent is financially unable to employ an attorney.
>>
>> (c) If the respondent is not represented by an attorney, the right to request and receive a court-appointed attorney at a later proceeding.
>
> (5) If it appears to the court in a proceeding under section 2(b) or (c) of this chapter that the respondent wants an attorney and is financially unable to retain an attorney, the court shall appoint an attorney to represent the respondent.
>
> (6) Except as otherwise provided in this subsection, in a proceeding under section 2(b) or (c) of this chapter, the respondent may waive his or her right to an attorney. . . .

The court rules similarly reflect a parent's right to counsel in a child protective proceeding. MCR 3.971(B)(2), quoted earlier, requires the court to advise the respondent of the right to an attorney before accepting a plea of admission or no contest. In addition, MCR 3.965(B)(5) requires the court to "advise the respondent of the right to the

---

[3] These sections give the family division of the circuit court jurisdiction over various types of proceedings involving juveniles, including proceedings concerning a juvenile under 18 years of age found within the county whose parents neglect or refuse to provide proper or necessary care or support, or who is without proper custody or guardianship. MCL 712.A.2(b), (c).

assistance of an attorney at the preliminary hearing and at any subsequent hearing pursuant to MCR 3.915(B)(1)(a)." MCR 3.915(B)(1) provides:

> (a) At respondent's first court appearance, the court shall advise the respondent of the right to retain an attorney to represent the respondent at any hearing conducted pursuant to these rules and that

> (i) the respondent has the right to a court appointed attorney if the respondent is financially unable to retain an attorney, and,

> (ii) if the respondent is not represented by an attorney, the respondent may request a court-appointed attorney at any later hearing.

> (b) The court shall appoint an attorney to represent the respondent at any hearing conducted pursuant to these rules if

> (i) the respondent requests appointment of an attorney, and

> (ii) it appears to the court, following an examination of the record, through written financial statements, or otherwise, that the respondent is financially unable to retain an attorney.

> (c) The respondent may waive the right to the assistance of an attorney, except that the court shall not accept the waiver by a respondent who is a minor when a parent, guardian, legal custodian, or guardian ad litem objects to the waiver.[4]

In addition, the United States Supreme Court has recognized the "interest of parents in the care, custody, and control of their children" as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v Granville*, 530 US 57, 65 (2000). It has also held that, in some instances, due process requires the appointment of counsel to represent a parent in a termination proceeding. *Lassiter v Dep't of Social Services*, 452 US 18, 31-32 (1981). In *Lassiter*, *supra* at 31, the United States Supreme Court considered the requirements of due process in the context of a child protective proceeding under the three factors articulated in *Mathews v Eldridge*, 424 US 319, 335 (1976),[5] and concluded that

---

[4] A respondent also has the right to be represented by an attorney at the dispositional review hearing following an emergency removal hearing. MCR 3.974(B)(3)(a)(i).

[5] The three factors are: (1) "the private interest that will be affected by the official action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Eldridge*, *supra* at 335.

the parent's interest is an extremely important one (any may be supplemented by the dangers of criminal liability in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of erroneous deprivation of the parent's rights insupportably high.

## IV.  The Preliminary Hearing

At the preliminary hearing in this case, the trial court explained that respondent and Morgan would have the right to be represented by an attorney and to call and cross-examine witnesses at a trial on the allegations in the DHS petition.  It then stated:

> So that's what your rights are on these allegations.  Now today I—I need to determine if one or more of these things might be true.  So if—if there is no way any of these things are true then I can dismiss this.

> \* \* \*

> But if one or more might be true then we will set this for a trial. . . . We can either go through a trial or if there is [sic] certain things that you're willing to say yeah that's true and it's enough for me to be concerned about the kids and—and take jurisdiction, then we don't have to have a trial.  And what would happen if I take jurisdiction is I would make certain orders and I guess try and get the family back on track.

> \* \* \*

> So hopefully this case would be dismissed at some point in the future.  Now, if I take jurisdiction that doesn't mean the kids leave the house.  Sometimes it's—I have to remove the kids but there are times that I don't have to remove kids.  We can still provide services and work with you but the kids don't have to be put in foster care or with a relative.  So if you look at this and you say, you know, we can admit certain things here and—and I take jurisdiction we don't have to remove the children just because that happens.  Before we get started though let me just get some administrative information out of the way.

Later in the hearing, the court asked respondent and Morgan if they wanted to be represented by counsel.  Morgan replied, "If this goes any farther, I think . . . ."  The court then interrupted and told Morgan and respondent that each of them would need to fill out a financial form.  The court then asked whether, "for purposes of today," they intended to "admit any of the things in the—any of the allegations."  After Morgan and respondent both stated that they agreed that there were some problems, the court placed them both under oath and read through the allegations.  After each admitted several of the

allegations, the trial court assumed jurisdiction over the children and ordered respondent and Morgan to, among other things, submit to drug screenings and to participate in DHS services. Although the trial court held numerous dispositional hearings in the interim, it did not appoint counsel to represent respondent until 14 days before the November 2007 termination trial.

## V. Analysis

The trial court erred at the preliminary hearing by failing to fully advise respondent of the consequences of her plea, MCR 3.971(B), and by failing to determine if she was financially unable to retain an attorney and, if so, to appoint counsel to represent her, MCL 712A.17c(5); MCR 3.915(B)(1). The consequences of these errors pervaded the 26-month child protective proceeding that followed and deprived respondent of due process.

First, the trial court, in violation of MCR 3.971(B)(4), failed to advise respondent that her plea of admission could be used against her in a later termination proceeding. Although the court did advise respondent of her right to a trial on the allegations and her right to call witnesses at such a trial, MCL 3.971(B)(3), it suggested that admitting the allegations would merely speed the process and enable the court to provide services to help "get the family back on track." It never even mentioned the possibility that respondent's parental rights could be terminated on the basis of her admissions. Then, the trial court proceeded with the hearing and placed respondent under oath despite her apparent invocation of her right to counsel. Morgan appeared to speak for both himself and respondent when he expressed a desire to be represented by counsel. The court never inquired of respondent separately regarding her wishes. The record does not reflect any waiver by respondent of her right to counsel. The court appears to have assumed that both respondent and Morgan wanted counsel, because it told them that they would each need to fill out a financial form. Given their expression of desire to be represented by counsel, the trial court was required by statute and court rule to determine whether respondent and Morgan were financially unable to obtain an attorney, and, if so, to appoint counsel to represent them during the remainder of the preliminary hearing. MCR 3.915(B)(1)(b); MCL 712A.17c(5).

Had respondent been represented by counsel during the preliminary hearing, counsel could have fully advised her of the consequences of a plea of admission, which the trial court failed to do. Instead, without full information and understanding of the consequences, respondent admitted most of the allegations in the petition. Respondent's admissions relieved the DHS of the burden of proving the allegations in the petition by a preponderance of the legally admissible evidence, MCR 3.972(C)(1), and enabled the trial court to immediately assume jurisdiction. After the court assumed jurisdiction, it ordered drug screenings of respondent and Morgan and psychological evaluations of the parents and children. The results of these court-ordered services unquestionably formed the basis for the court's later termination decision.

A child protective proceeding is "a single continuous proceeding." *In re LaFlure*, 48 Mich App 377, 391 (1973). In deciding whether to terminate parental rights, a trial court considers evidence admitted at all dispositional and review hearings. *Id.* In this case, the combination of the trial court's errors at the preliminary hearing in failing to appoint counsel and in accepting respondent's invalid plea affected the entire proceeding that followed. First, respondent's invalid plea formed the basis for the trial court's exercise of jurisdiction and for the admission of evidence at subsequent proceedings. Once the allegations in the state's petition are proven, at trial or by a plea, all relevant and material evidence is admissible at dispositional and permanency planning hearings.[6] In this case, respondent's *invalid* plea formed the basis for the admission of hearsay evidence during subsequent hearings. In addition, hearsay evidence is only admissible at the termination hearing to prove the statutory grounds for termination where termination is sought on the same grounds that formed the basis for the trial court's exercise of jurisdiction. MCR 3.977(G)(2); see *In re Gilliam*, 241 Mich App 133 (2000) (reversing the trial court's termination decision where hearsay was admitted to prove grounds for termination that were unrelated to the initial reasons for jurisdiction); *In re Blocker*, unpublished opinion per curiam of the Court of Appeals, issued January 17, 2008 (Docket No. 279581) (reversing the trial court's termination decision where the trial court failed to advise the respondent of the consequences of his plea to the allegations in an abuse report, there was no indication that respondent stipulated the admission of the abuse report to establish the statutory grounds for termination, and the statutory grounds were not otherwise established by legally admissible evidence). Thus, respondent's invalid plea also formed the basis for the admission of hearsay evidence at the termination trial in this case.[7]

The trial court's error in failing to advise respondent of the consequences of her plea was compounded by the absence of counsel to represent respondent during all the dispositional and permanency planning hearings. Although the rules of evidence do not apply at dispositional and permanency planning hearings, and all relevant and material evidence, including oral and written reports, was admissible,[8] counsel for respondent

---

[6] MCR 3.971; MCR 3.972(C)(1); MCR 3.973(E)(1); MCR 3.976(D)(2); MCR 3.977(G)(2).

[7] As Justice Young points out, a plea is a valid means of proving the allegations in a petition by a preponderance of the evidence and a valid basis for a trial court's exercise of jurisdiction, MCR 3.971(A), (B)(3)(b), and it was the court's assumption of jurisdiction that changed the evidentiary standard. In this case, however, respondent's plea, and, by extension, the trial court's assumption of jurisdiction and the subsequent admission of evidence under the more relaxed evidentiary standard, was *invalid*.

[8] MCR 3.971; MCR 3.972(C)(1); MCR 3.973(E)(1); MCR 3.976(D)(2); MCR 3.977(G)(2).

could have challenged the evidence presented by the DHS and could have called and cross-examined the individuals who prepared the many reports DHS witnesses referenced in their testimony at these hearings.[9] Instead, once these proceedings were set in motion by respondent's invalid plea, the DHS was allowed to present unchallenged hearsay evidence, including the results of respondent's drug screenings, psychologists' reports pertaining to respondent and the children, and statements of respondent's therapist, through the testimony of DHS workers. Other witnesses did not appear at the hearings. No one was subjected to cross-examination. The DHS built a record of respondent's failed drug tests and struggles to maintain employment and appropriate housing over the course of more than two years, while respondent never challenged the veracity of that evidence or offered any evidence of her own. By the time counsel was appointed to represent respondent two weeks before the termination trial, the DHS had built an extensive record against respondent, and there was little counsel could do to remedy the harm. In making its termination ruling, the trial court cited in particular respondent's "mental health needs" and "dependency issues."

In addition, there is a real possibility that counsel could have prevented the removal of the children from the home of respondent and Morgan in January 2006. The DHS caseworker did not even recommend removal at the January 12, 2006, dispositional review hearing after which the trial court entered the removal order. Instead, the caseworker stated that she was leaving it to the discretion of the trial court, but recommended intensive therapy and substance abuse treatment for respondent and Morgan if the children did remain in the home. She also noted that respondent's oldest child, then-14-year-old RH, was "very bonded" to respondent and expressed concern about the effect removal would have on him in particular. The court ordered removal because respondent and Morgan continued to have positive drug screenings and because, contrary to the court's orders, additional family members continued to frequent the home. The court's removal order, however, noted that the "home is appropriate," that there was "[n]o risk to children as to condition," and that the parents were "cooperative." As the caseworker's ambivalence illustrates, this was a close case, and the evidence supporting removal was not overwhelming. Counsel for respondent could have presented evidence on behalf of respondent, challenged the evidence of her failed drug screenings, and argued for the children to remain in the home. There was a strong argument to be made that the removal was not appropriate in the first place, but that case was never made because respondent was not represented by counsel.

---

[9] At an initial dispositional hearing, a permanency planning hearing, and a termination hearing at which termination is sought on the basis of the same circumstances that led the court to take jurisdiction, the parties must be given an opportunity to examine and controvert written reports and may be allowed to cross-examine the individuals who made the reports when those individuals are reasonably available. MCR 3.973(E)(3); MCR 3.976(D)(2); MCR 3.977(G)(2).

Once the children were removed from the home, respondent faced a losing battle in avoiding termination. Even though no evidence was presented on respondent's behalf, the DHS's own witnesses indicated that respondent was making progress, and that termination was neither appropriate nor in the children's best interests. At a dispositional review hearing on December 7, 2006, a DHS caseworker reported that respondent's visits with the children were going well and recommended unsupervised visitation. At another dispositional review hearing on June 7, 2007, a DHS caseworker testified that he did not think termination was appropriate for a 16-year-old, that RH's bond with his mother was strong, and that respondent did not pose a danger to RH. Another caseworker testified that termination would also "be hard on" respondent's two younger sons because they had "a definitive bond with Mom," and enjoyed and looked forward to visits with her. A DHS service plan for the reporting period ending in August 2007 noted that respondent's therapist had indicated that respondent "had made a lot of progress over the time that she had worked with" respondent, and that respondent "appears to have stabilized emotionally and is capable of caring for her children." Moreover, at a permanency planning hearing held on September 6, 2007 — less than three months before the termination trial — a DHS caseworker testified that respondent's therapist did not support termination and believed that "if this case were on the front end without having removal," removal would not even have taken place. The caseworker also testified that respondent's therapist had indicated that respondent had "come a long, long, way" with "the substance abuse issue."

As the above examples indicate, evidence favorable to respondent existed, and respondent showed signs of progress during the two years between the preliminary hearing and the termination trial. Had respondent been represented by counsel, it seems likely that significantly more evidence favorable to respondent would have been presented. Counsel for respondent may also have been able to prevent the removal of the children from respondent's home by arguing that removal was not appropriate, given the favorable evidence, and by advocating for alternatives to removal. Counsel also could have made a strong argument that termination was inappropriate, particularly for respondent's 16-year-old son, to whom respondent posed no danger. Because the trial court's errors at the preliminary hearing pervaded this entire proceeding, I believe that errors that occurred early in the proceedings plainly affected respondent's substantial rights.[10]

---

[10] Justice Young's argument that "the admission of the evidence following the entry of the invalid plea is harmless beyond a reasonable doubt" because "[h]ad respondent not entered a plea, the court would have conducted a trial under MCR 3.972" and "certainly would have assumed jurisdiction" is highly speculative. The result in this case was far from inevitable, as is perhaps best illustrated by the DHS caseworker's testimony, noted above, that respondent's therapist did not support termination and believed that "if this case were on the front end without having removal," removal would not even have taken place.

This case is part of a disturbing and recent pattern of trial courts' failures to appoint counsel and untimely appointment of counsel to represent parents in child protective proceedings. See, e.g., *In re Clemons*, unpublished opinion per curiam of the Court of Appeals, issued August 19, 2008 (Docket No. 281004) (failure to advise the respondent of her right to counsel, and respondent appeared at the termination trial without counsel). Our Legislature requires the appointment of counsel in child protective proceedings. Trial courts must comply with these requirements unless and until the Legislature abolishes or modifies them. Moreover, given the nature of the interest at stake in child protective proceedings, I question whether the failure to appoint counsel to represent respondents throughout such proceedings can ever be harmless error. As noted, the United States Supreme Court has recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel*, *supra* at 65; see also *Santosky v Kramer*, 455 US 745, 753 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."). In addition, this Court has recognized that "cases involving the involuntary, permanent termination of parental rights are unique in the kind, the degree, and the severity of the deprivation they inflict." *In re Sanchez*, 422 Mich 758, 765-766 (1985) (citation and quotation marks omitted). And, in *Reist v Bay Circuit Judge*, 396 Mich 326, 346 (1976), three Justices of this Court concluded:

> Because of the nature of parental rights termination proceedings and of the basic, fundamental nature of the parental relationship in our society, the Due Process Clause requires the assignment of counsel at public expense for an indigent for hearings when the state seeks to terminate his parental rights.

The Court of Appeals has also held that an indigent parent has a constitutional right to counsel at a hearing that may involve termination of parental rights. *In re Powers*, 244 Mich App 111, 121 (2000); *In re Cobb*, 130 Mich App 598, 599 (1983). Whatever the answer to the harmless error question, the harm that resulted from the trial court's failure to appoint counsel at the first appearance is clear.[11]

---

[11] Contrary to Justice Young's contention, a structural error rule for the appointment of counsel in termination of parental rights cases would not "catapult parental rights above and beyond a criminal defendant's liberty interest." In a criminal proceeding, the Sixth Amendment guarantees the right to counsel any time incarceration is the actual penalty, even for a misdemeanor conviction. *Scott v Illinois*, 440 US 367 (1979); *Argersinger v Hamlin*, 407 US 25 (1972). See also *Glover v United States*, 531 US 198, 203 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.") Physical liberty is but one aspect of an individual's liberty interest. Another is the relationship between parents and children. A structural error rule for the deprivation of counsel in termination of parental rights proceedings would simply

### VI. Conclusion

For the reasons explained by the Court of Appeals, the trial court clearly erred by finding that the DHS presented clear and convincing evidence to support the statutory grounds for termination. In addition, the trial court's errors in failing to advise respondent that her plea of admission could be used against her in a later termination proceeding and in failing to appoint counsel to represent her until 14 days before the termination trial violated statutory and court-rule based protections. These fundamental errors led to the admission of unchallenged and untested evidence in later proceedings. In my view, these flaws deprived respondent of due process.

KELLY, C.J., joins the statement of CORRIGAN, J.

YOUNG, J. (*concurring*).

I concur with the order affirming the Court of Appeals judgment and remanding to the trial court for further proceedings. I write separately only to respond to Justice Corrigan's concurring statement.

First, I disagree with Justice Corrigan's decision to address respondent's due process challenges because of our rule that we should decline to reach constitutional challenges when controversies can be resolved on nonconstitutional bases.[12] The trial court's violation of numerous court rules and statutes constitutes significant error that requires reversal of the termination order as explained in Justice Corrigan's concurring statement. As the numerous state law violations are sufficient to support this decision, this Court should not consider additional constitutional issues.

---

recognize that termination of parental rights is a deprivation of a liberty interest at least as significant as incarceration. Indeed, "[f]ew forms of state action are both so severe and so irreversible." *Santosky*, *supra* at 759.

In *Santosky*, the United States Supreme Court recognized that a parent's interest in her child "is an interest far more precious than any property right." *Id*. at 758-759, citing *Lassiter*, *supra* at 27. If anything, the Court's conception of the importance of such rights has evolved since *Lassiter* and *Santosky*. In *MLB v SLJ*, 519 US 102, 125 (1996), the Court recognized that, "[l]ike a defendant resisting criminal conviction," a parent appealing a decree terminating her parental rights "seeks to be spared from the State's devastatingly adverse action."

[12] *In re Rood*, ___ Mich ___, ___ (Docket No. 136849, decided April 2, 2009) (Young, J., concurring in part and dissenting in part); *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734 (2003), citing *People v Riley*, 465 Mich 442, 447 (2001), and *MacLean v Michigan State Bd of Control for Vocational Ed*, 294 Mich 45, 50 (1940); *Delta Charter Twp v Dinolfo*, 419 Mich 253, 264 n 4 (1984).

Second, I disagree with Justice Corrigan's conclusion that respondent was denied her right to due process by the admission of hearsay evidence at the termination trial. In general, the rules of evidence do not apply during child protective proceedings.[13] When the court takes jurisdiction over a child, however, the parent has the option to proceed to trial at which the Department of Human Services (DHS) must present legally admissible evidence to establish the grounds for taking jurisdiction by a preponderance of the evidence.[14] However, a parent may waive the right to trial and the right to have the DHS "prove the allegations in the petition by a preponderance of the evidence" by entering a plea of admission and allowing the court to take jurisdiction.[15] By entering a plea, the parent waives the right to have the court take jurisdiction solely on the basis of legally admissible evidence. This waiver does not shift the parent's "right" to have legally admissible evidence presented against him to a later point in the proceedings. Such a result is not contemplated anywhere in the court rules.

Rather, the court rules provide that the rules of evidence do not apply at the termination hearing unless the parent's rights are terminated at the initial dispositional hearing or if the parent's rights are terminated on the basis of grounds stated in a supplemental petition.[16] To the extent that respondent's rights were terminated, partly on the basis of grounds not raised in the initial petition, I agree that the DHS was required to present legally admissible evidence. However, respondent had no right to have the initial grounds for termination established only by evidence that would be admissible under the rules of evidence. Respondent's entry of a plea of admission did not open the door to such inadmissible evidence at the termination trial; the fact that the court had taken jurisdiction over the children, regardless of the method, was the cause of the change in the evidentiary standard. Had respondent not entered a plea, the court would have conducted a trial pursuant to MCR 3.972 to assume jurisdiction. Given the evidence regarding the condition of the home, the presence of several unsuitable adult residents, and the parents' neglect of the children, the trial court certainly would have assumed jurisdiction at that time. Accordingly, the child protective proceedings, including the ultimate termination trial, would have been based on the same otherwise inadmissible evidence. As this result was inevitable, the admission of the evidence following the entry of the invalid plea is harmless beyond a reasonable doubt.[17]

---

[13] Several court rules provide that the rules of evidence do not apply at various stages of the proceedings: MCR 3.965(B)(11) (preliminary hearing); MCR 3.966(C)(2)(c) (placement review proceeding); MCR 3.973(E)(1) and MCR 3.975(E) (dispositional review hearings); MCR 3.976(D)(2) (permanency planning hearing).

[14] MCR 3.972(C)(1).

[15] MCR 3.971(B)(3)(b).

[16] MCR 3.977(E), (F), (G)(2).

[17] Contrary to the suggestion made by Justice Corrigan, *ante* at 11 n 10, I do not believe that the removal of the children from respondent's home or the ultimate termination

Finally, Justice Corrigan makes the stunning announcement that she "question[s] whether the failure to appoint counsel to represent respondents throughout such proceedings can ever be harmless error."[18] Justice Corrigan's query suggests a structural error analysis beyond any existing precedent. Such a standard goes well beyond the due process right to counsel even in criminal proceedings. In a criminal proceeding, a defendant has a due process right to appointed counsel only in cases that may result "in the defendant's loss of personal liberty."[19] Even then, the denial of counsel only amounts to structural error when it occurs during a critical stage in the proceedings.[20]

In *Lassiter v Dep't of Social Services*, the United States Supreme Court held that a parent's due process rights are not violated because of a failure to appoint counsel,

---

decision was inevitable. Moreover, Justice Corrigan has not responded to the point actually made in my concurrence—that the *assumption of jurisdiction was inevitable* based on the evidence that would have been presented at the trial conducted pursuant to MCR 3.972.

[18] *Ante* at 12.

[19] *Lassiter v Dep't of Social Services*, 452 US 18, 25-27 (1981), citing *Scott v Illinois*, 440 US 367, 373-374 (1979), and *Argersinger v Hamlin*, 407 US 25 (1972).

[20] *United States v Cronic*, 466 US 648, 659 (1984).

even at a termination hearing, when the potential deprivation of rights is at its greatest.[21] Justice Corrigan's query defies the *Lassiter* Court's holding and analysis. Through statute and court rules, Michigan has afforded respondent parents greater protection than that required by the federal constitution. Michigan law requires the courts to advise a parent of his right to counsel and to appoint counsel when requested at any time during a child protective proceeding.[22] However, the creation of a due process right to appointed counsel at any and all stages of a child protective proceeding, the deprivation of which amounts to structural error, is a completely novel concept unsupported by precedent and, in fact, contrary to precedent from the Supreme Court of the United States. Such a rule would catapult parental rights above and beyond a criminal defendant's liberty interest. Such a rule implies that *every* stage of a child protective proceeding is "critical," something that is not true even in criminal procedure.[23]

Ultimately, the respondent was denied her right to appointed counsel, in violation of statute and court rule, when the trial court ignored respondent's request for representation. It is completely unnecessary to entertain hypothetical questions regarding whether such an error defies harmless error analysis.

---

[21] *Lassiter*, *supra* at 31-32.

[22] MCL 712A.17c(4), (5); MCR 3.915(B)(1); MCR 3.965(B)(5); MCR 3.974(B)(3)(a)(i).

[23] Justice Corrigan avoids answering this criticism by focusing solely on the nature of the right being protected. I do not question that a criminal defendant is entitled to counsel when he faces imprisonment. The law is quite clear on this right. That right, however, is not unqualified and does not extend beyond "critical phases" of the criminal adjudicative process. Thus, I question whether Justice Corrigan is suggesting that this Court should expand a criminal defendant's constitutional right to counsel to non-critical phases of the proceedings or whether she is implying that parental rights deserve *greater* protection than a criminal defendant's interest in physical liberty. In order to make sense of her position, she must be urging one or the other, but neither is grounded in any current constitutional jurisprudence.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 8, 2009

*Corbin R. Davis*

Clerk