In the Matter of CATHOLIC CHARITIES AND COMMUNITY SERVICES of the Archdiocese of Denver, Inc., Petitioner–Appellee.

In the Interest of C.C.G., a Child, and Concerning R.F., Respondent–Appellant,

and

The Ponca Tribe of Nebraska, Intervenor–Appellant,

and Concerning A.J. and J.J., Respondents–Appellees.

No. 96CA0835.

Colorado Court of Appeals, Div. IV.

July 10, 1997.

Green & Josefiak, P.C., Philip B. Green, Denver; Law Office of Gregory Garland, Gregory S. Garland, Denver, for Petitioner–Appellee.

Stephen J. Harhai, Guardian Ad Litem.

Cleaver and Cleaver, Thoburn G. Cleaver, Boulder, for Respondent–Appellant.

Indian Law Clinic, University of Colorado School of Law, H. Patrick Furman, Sarah A. Krakoff, Directors, Laurel IronCloud, Cynthia M. Stovall, Student Attorneys, Boulder, for Intervenor–Appellant.

Barbara Lavender, P.C., Barbara Lavender, Boulder, for Respondents–Appellees.

Opinion by Chief Judge STERNBERG.

R.F. (father) appeals from a juvenile court judgment terminating the parent-child legal relationship between him and his daughter, C.C.G., pursuant to § 19–5–105, C.R.S. (1996 Cum.Supp.). We reverse and remand for further proceedings.

Shortly after the child was born in May 1995, the mother initiated a proceeding pursuant to § 19–5–101, et seq., C.R.S. (1996 Cum.Supp.) for voluntary relinquishment of her parental rights. Custody of the child was given to Catholic Charities and Community Services of the Archdiocese of Denver, Inc. (Catholic Charities), and the child was placed with A.J. and J.J. (intervenors) for adoption.

On July 5, 1995, Catholic Charities filed a petition to terminate father's parental rights pursuant to § 19–5–105. Shortly thereafter, the Ponca Tribe of Nebraska (tribe) filed a motion to intervene pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1911(c) (1978) (ICWA), asserting that the child was an "Indian child" and that the ICWA applied to the proceeding. Additionally, father, who was incarcerated in Texas on a Colorado conviction, filed a motion for an order to transport him to all hearings in the matter.

On December 4, 1995, a hearing was conducted to resolve all pending motions and to determine the procedural course of the matter. Although the tribe did not appear, argument took place on the motion to intervene and the applicability of the ICWA. Following the hearing, the juvenile court took the pending motions under advisement, delineated the procedural course to be followed, ordered father to submit an affidavit as to his parole eligibility date, and ordered the parties to submit written argument concerning termination of parental rights under § 19–5–105(3), C.R.S. (1996 Cum.Supp.).

On March 21, 1996, the juvenile court entered a written order granting the tribe's motion to intervene, but made no specific finding whether the ICWA applied. Five days later, without hearing, the juvenile court entered judgment terminating father's parental rights pursuant to § 19–5–105(3). This order also did not address the applicability of the ICWA.

### I.

Father and the tribe contend that the juvenile court erred in failing to apply the ICWA. They argue, among other things, that the juvenile court impliedly acknowledged the applicability of the ICWA in granting the tribe's motion to intervene. Catholic Charities, the intervenors, and the guardian ad litem assert (1) that this is a voluntary relinquishment proceeding to which, under 25 U.S.C. §§ 1912(a) and 1913 (1978), the ICWA does not apply, or (2) that the "existing Indian family" doctrine precludes application of the ICWA. Because the juvenile court failed to address explicitly the applicability of the ICWA, we conclude that reversal and remand is required.

■ ■ The ICWA sets forth minimum federal standards for the removal of an Indian child from his or her family. 25 U.S.C. § 1902 (1978). Thus, an "Indian child" must be involved in the proceeding in order for the ICWA to apply. *People in Interest of A.G.-G.*, 899 P.2d 319 (Colo.App.1995). Determination of a child's Indian status is a factual one. *See People in Interest of A.G.-G., supra; People in Interest of A.E.*, 749 P.2d 450 (Colo.App.1987). No determination whether the child is an Indian has been made.

■ ■ The "existing Indian family" doctrine, which has not been addressed or adopted by the Colorado courts, precludes application of the ICWA when the Indian child's parent or parents have not maintained a significant social, cultural, or political relationship with his or her tribe. *See State in Interest of D.A.C.*, 933 P.2d 993 (Utah App. 1997); *In re Bridget R.*, 41 Cal.App.4th 1483, 49 Cal.Rptr.2d 507 (Cal.App.1996). Application of the doctrine requires resolution of factual issues. *See In re Bridget R., supra.* No factual determinations of these questions have been made.

Moreover, the juvenile court made no conclusions of law as to the applicability of the ICWA. Although implicit in the order granting intervention is a determination that the child is an "Indian child," *see* 25 U.S.C. § 1911(c) (1978), the order does not reveal the basis of the court's decision not to apply the ICWA, *i.e.*, whether the proceeding was voluntary, whether the child's parents have maintained sufficient relationship with the tribe, or whether the "existing Indian family" exception to the ICWA applied. Furthermore, the record contains little, if any, evidence upon which factual findings concerning these issues could be based.

■ ■ Because of the paucity of evidence and because the juvenile court's order gives no basis for its ruling, we decline the parties' request either to reject or to adopt the "existing Indian family" doctrine. Instead, we remand the matter to the juvenile court for further proceedings. *See* C.R.J.P. 1; C.R.C.P. 52(a); *In re Marriage of Van Inwegen*, 757 P.2d 1118 (Colo.App.1988).

### II.

Father and the tribe next contend that father's right to due process was violated because the juvenile court refused to transport father from Texas to attend all hearings and did not conduct a termination hearing during which he could present evidence. We disagree.

At the outset, Catholic Charities asserts that the tribe does not have standing to raise

issues concerning father's due process rights. Because the tribe's due process arguments are substantially the same as those propounded by father and because 25 U.S.C. § 1914 (1978) allows a tribe to petition a court of competent jurisdiction to invalidate an action which violates certain procedural requirements of the ICWA, we will assume for the purposes of argument that the tribe has standing here. *See In re J.R.S.,* 690 P.2d 10 (Alaska 1984).

■ Due process requires the state to provide a fundamentally fair procedure in a proceeding for termination of parental rights. *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982). Thus, the Children's Code and case law require that the criteria for termination be established by clear and convincing evidence and that a parent be given notice of the termination proceeding, an opportunity to be heard and to defend, and to receive advice of counsel. Sections 19–1–105(2) and 19–5–105(5) C.R.S. (1996 Cum.Supp.); *People in Interest of A.M.D., supra.*

■ However, an incarcerated parent who is represented by counsel does not have a due process right to be transported to hearings. *People in Interest of C.G.,* 885 P.2d 355 (Colo.App.1994).

■ Here, father appeared in the proceeding through counsel, presented evidence as to his parole date by affidavit, and submitted a brief concerning the application and construction of § 19–5–105(3). Thus, we perceive no violation of father's right to due process. *See People in Interest of V.M.R.,* 768 P.2d 1268 (Colo.App.1989).

### III.

Father and the tribe also contend that the juvenile court misconstrued § 19–5–105(3) in finding that father was unable personally to assume custody of the child promptly. He argues that, if transported to the court for a hearing, he could have assumed physical and legal custody of the child, then have entrusted the child to her paternal grandmother for temporary care. We find no error.

■ When construing a statute, a court must give effect to the intent of the General Assembly and adopt the construction that best effectuates the purpose of the statutory scheme. *M.S. v. People,* 812 P.2d 632 (Colo. 1991). To determine intent, a court should look first to the language of the statute and give the words their ordinary meaning. *People in Interest of T.L.D.,* 809 P.2d 1120 (Colo. App.1991). If the statutory language is clear and the intent appears with reasonable certainty, resort to other rules of statutory construction is unnecessary. *People v. District Court,* 713 P.2d 918 (Colo.1986).

The express purpose of the relinquishment and adoption statutes, § 19–5–101, et seq., C.R.S. (1996 Cum.Supp.), is to promote the integrity and finality of adoption to ensure that children whose parents are unable or unwilling to provide proper parental care will be raised in stable, loving, and permanent families. Section 19–5–101, C.R.S. (1996 Cum.Supp.).

To this end, § 19–5–105(3), C.R.S. (1996 Cum.Supp.) provides that if the nonrelinquishing parent appears in the termination proceeding, but "cannot personally assume legal and physical custody promptly, taking into account the child's age, needs, and individual circumstances," his or her parental rights must be terminated. If the parent is able personally to assume custody of the child promptly, the court may award custody to the parent if the criteria set forth in § 19–5–105(3.5), C.R.S. (1996 Cum.Supp.) are met.

We conclude that the language of the statute is clear and that the General Assembly intended that custody be given to a nonrelinquishing parent only if that parent can promptly assume ongoing parental responsibility for the child. This intent is evinced not only by use of the word "personally," but also by the express requirement that the nonrelinquishing parent assume both physical and legal custody of the child. *See* §§ 19–1–103(35), 19–1–103(73), and 19–1–103(84), C.R.S. (1996 Cum.Supp.). *See also In re Custody of C.C.R.S.,* 892 P.2d 246 (Colo. 1995). Furthermore, had the General Assembly intended to allow a nonrelinquishing parent to avoid termination of his parental rights by making alternative custodial arrangements, it would have so provided.

■ Here, the affidavit submitted by father established, clearly and convincingly, that he would not be eligible for parole for seventeen months. Taking into account the child's tender age, we agree with the juvenile court's conclusion that father was not able personally to assume physical and legal custody of the child promptly.

■ Finally, we reject father's argument that the order of termination is improperly based on his incarceration. Although incarceration of a parent does not ordinarily operate as a forfeiture of parental rights, *Diernfeld v. People,* 137 Colo. 238, 323 P.2d 628 (1958); *People in Interest of S.B.,* 742 P.2d 935 (Colo.App.1987), *cert. denied as improvidently granted sub nom. N.B. v. People,* 754 P.2d 1177 (Colo.1988), the General Assembly may provide otherwise. *See* § 19–3–604(1)(b)(III), C.R.S. (1996 Cum.Supp.); *People in Interest of M.C.C.,* 641 P.2d 306 (Colo. App.1982).

## IV.

Lastly, because father did not contend in the juvenile court that § 19–5–105(3) was unconstitutionally vague, we decline to address this contention on appeal. *See People in Interest of T.S.,* 781 P.2d 130 (Colo.App. 1989).

The judgment is reversed and the cause is remanded to the juvenile court to conduct further evidentiary proceedings and to make findings of fact and conclusions of law as to the applicability of the ICWA, *i.e.,* whether the proceeding was voluntary or whether the "existing Indian family" doctrine applies. In the event that the juvenile court determines that the ICWA is applicable, it is directed to reconsider its judgment of termination and, if necessary, to conduct further evidentiary proceedings with respect to termination of the parent-child legal relationship. In the event that the juvenile court determines that the ICWA does not apply, the judgment of termination is affirmed, subject to appellate review of ICWA applicability.

JONES and ROY, JJ., concur.