In the Matter of the Petition of
D.S.L., Petitioner–Appellee,

For the Relinquishment of Children,
C.S.M. and T.G.M., and Concerning
G.R.M., Respondent–Appellant.

No. 00CA0756.

Colorado Court of Appeals,
Div. III.

Jan. 18, 2001.

No Appearance for Petitioner–Appellee.

Jon Lewis Kelly, Cortez, CO, for Respondent–Appellant.

Opinion by Judge DAILEY.

G.R.M. (father) appeals from the judgment terminating his parent-child legal relationship with his children, C.S.M. and T.G.M., based upon the petition for relinquishment filed by D.S.L. (mother). We reverse the judgment.

## I.

The limited record on appeal shows that the marriage of the parties was dissolved in May 1998, and father was ordered to pay child support for the parties' two children in the amount of $446.01 per month.

In July 1998, mother filed a separate action, seeking the relinquishment and termination of father's parental rights under § 19–5–105, C.R.S.2000. She asserted that father had abandoned the children, ages seven months and two years, and failed to pay child support for at least one year. Father was personally served in Arizona with a copy of the petition in August 1998.

Mother successfully opposed an involuntary dismissal of the action in December 1998 based upon lack of any further action. A hearing was held in March 2000, at which father appeared by telephone without counsel.

Mother testified that she received only two child support payments since the marriage was dissolved, that father did not comply with the order to pay medical expenses or maintain health insurance for the children, and that he had not seen the children for almost two years. She testified that she believed that termination was in the children's best interests, that she had been married for three weeks to her current husband, whom she had known for one year, and that she would consent to a subsequent adoption by him. However, an adoption proceeding had not yet been filed.

Father objected to the termination of his parental rights. He testified that he had been distraught over the divorce, was a self-employed welder "getting back on his feet," and was now in a better position to pay support. He further testified that, as a result of collection efforts by the Arizona Department of Social Services (ADSS) and the issuance of a warrant, he had paid $1000 cash to the Arizona court one week earlier. He conceded that arrearages exceeded $10,000, but asserted that the ADSS had agreed to reduce child support to $200 per month. He requested that he be given another chance to show that he would pay support in the future. He also testified that he had been able to reach mother only at work or at her parents' house and, therefore, had not had a phone number which he could use to talk directly to the children.

In granting the termination, the trial court applied § 19–5–105(3.1), C.R.S.2000. As grounds for the termination, the court found that father had not maintained regular or meaningful contact with the children under § 19–5–105(3.1)(b)(I), and that father did not promptly take substantial parental responsibility for the children under § 19–5–105(3.1)(c). The court specifically found that father had failed to file an answer to the petition within 30 days, had failed to pay reasonable and regular support according to his means, and had failed to comply with the court order for payment of medical expenses and health insurance. Accordingly, the court concluded that termination was in the best interests of the children.

## II.

Father contends that mother could not seek to terminate his legal relationship with

his children under § 19–5–105, C.R.S.2000, because she had not relinquished, and had no intent of relinquishing, her own legal relationship with the children. According to father, mother could seek to terminate his parental rights only in conjunction with a stepparent adoption pursuant to § 19–5–203(1)(d)(II), C.R.S.2000. We agree.

Section 19–5–105(1), C.R.S.2000, provides, in pertinent part, that:

If one parent relinquishes or proposes to relinquish or consents to the adoption of a child, the agency or person having custody of the child shall file a petition in the juvenile court to terminate the parent-child legal relationship of the other parent, unless the other parent's relationship to the child has been previously terminated or determined by a court not to exist .... (emphasis added)

■ Here, despite the provision in the order stating otherwise, the record is undisputed that mother did not relinquish or intend to relinquish custody of the children. Mother did consent to permit the children to be adopted by her husband, their stepfather, sometime in the future. However, we conclude that § 19–5–105 does not authorize termination of the parent-child legal relationship of the other parent in anticipation of a possible stepparent adoption.

■ Section 19–5–105 is part of the legislative article on relinquishment. The statutes governing parental relinquishment, § 19–5–101, et seq., C.R.S.2000, and adoption, § 19–5–201, et seq., C.R.S.2000, are part of the Children's Code. These statutes must be read together in order to effectuate the legislative intent and to give consistent, harmonious, and sensible effect to all their parts. In re Adoption of T.K.J., 931 P.2d 488 (Colo.App.1996). Because adoption irrevocably affects the lives of children and their biological and adoptive parents, strict compliance with the statutory provisions and procedures is required. In re Custody of C.C.R.S., 872 P.2d 1337 (Colo.App.1993), aff'd, 892 P.2d 246 (Colo.1995); In re Adoption of T.K.J., supra.

■ The General Assembly has declared that "parental relinquishment and adoption of children are important and necessary options to facilitate the permanent placement of minor children if the birth parents are unable or unwilling to provide proper parental care." Section 19–5–100.2(1), C.R.S.2000 (emphasis added). The express purpose of the relinquishment and adoption scheme is to promote the integrity and finality of adoption to ensure that children whose parents are unable or unwilling to provide proper parental care will be raised in stable, loving, and permanent families. See In re Catholic Charities & Community Services, 942 P.2d 1380 (Colo.App.1997).

Section 19–5–103, C.R.S.2000, clearly evidences the General Assembly's intent not to base termination proceedings under § 19–5–105 upon the type of consent mother proffered here. Section 19–5–103(1) requires that the parent desiring to relinquish his or her child obtain counseling as the court deems appropriate and file a petition to relinquish voluntarily his or her own rights.

Here, it is undisputed that mother did not consent or intend to relinquish her own parent-child legal relationship. Instead, mother wanted to keep her relationship intact but involuntarily end father's, in order to make the children available for stepparent adoption. Such a situation is expressly addressed by the stepparent adoption provisions of § 19–5–203(1)(d)(II).

The stepparent adoption process provided by § 19–5–203(1)(d)(II) is triggered by a written and verified consent to adoption signed by the parent who is married to the adopting stepparent. The stepparent adoption proceeding necessarily includes the termination of the parental rights of the parent who has only residual parental responsibilities. Thus, there must be strict compliance with § 19–5–203(1)(d)(II), In re Petition of E.R.S., 779 P.2d 844 (Colo.1989), which contains standards for terminating parental rights different from those found in § 19–5–105.

■ Accordingly, we conclude mother was not authorized to terminate father's parent-child legal relationship with his children under § 19–5–105, because she had not relinquished her own legal relationship with the children. Further, because father's parent-

child legal relationship had not been previously relinquished or terminated and no stepparent adoption proceeding was pending, § 19–5–203(1)(d)(II) was inapplicable. Thus, the trial court erred in terminating father's parental rights.

The judgment terminating father's parent-child legal relationship and declaring the children available for adoption is reversed.

Judge NEY and Judge KAPELKE concur.