Opinion by JUDGE ROMÁN
¶ 1 R.A.M. (father) appeals the trial court's order denying his motion for relief from the judgment terminating his parental rights. The child's mother, M.B. (mother), voluntarily relinquished custody of B.G.B. (child) to Creative Adoptions (adoption agency). The court terminated father's rights under section 19-5-105(3), C.R.S.2013, which requires termination of the non-relinquishing parent's rights if, after appearing, he or she "cannot personally assume legal and physical custody, *817 taking into account the child's age, needs, and individual circumstances."
¶ 2 We conclude, under the particular circumstances presented, that the judgment terminating father's rights is void because it was entered in violation of his due process right to appointed counsel. Because we conclude the judgment is void, we also conclude the court erred in denying father's motion for relief from judgment. Consequently, we reverse the order denying father's motion, vacate the judgment terminating his parent-child legal relationship, and remand the case to the trial court for a new hearing, for which father shall be appointed counsel, if he is still indigent.
I. Background
¶ 3 The case below began when mother filed a petition to relinquish her parental rights to the child. Mother named father as the only potential father of the child. With her petition for relinquishment, mother also filed a petition to terminate father's parental rights. Father was served with the petition, summons, and notice to terminate in jail.
¶ 4 Father responded to the petition by indicating that he did not wish to relinquish his rights. He also requested DNA testing and asked the court for a writ of habeas corpus ad prosequendum, so that he could personally appear at the hearing.
¶ 5 At the hearing, the adoption agency's counsel stated that he appeared on behalf of mother. The court started by hearing mother's testimony without father, or any representative of father, present. Mother testified that father was the only potential father. She also testified that allowing the child to be adopted was in the child's best interests, in part, because father was a "bad person" and should not be in the child's life. During the portion of the hearing where mother testified, the court and counsel for the adoption agency also discussed whether father was entitled to a paternity test.
¶ 6 There was a pause in the proceedings where mother was excused, and father subsequently appeared pursuant to a writ issued by the court. He indicated that (1) he was not prepared to proceed; (2) he thought he would have been no longer incarcerated and would have an attorney for the hearing; and (3) he did not understand his rights. He also requested to continue the hearing and reiterated that he was "not even sure if the child is mine."
¶ 7 The court did not rule on his request to continue the hearing. Although the court engaged in a discussion with the adoption agency's counsel on the meaning of the relinquishment statute and the appropriate procedure to use, the court did not advise father of the nature of the hearing, what the court must determine, the burden of proof, and did not ask father if he understood. The court also did not inquire further into father's wish for counsel or whether he could afford counsel.
¶ 8 Instead, the court stated that "[i]t would be appropriate to take some testimony." The adoption agency called father as a witness. Father acknowledged that he was currently in custody serving a six-month sentence, but he testified that he would be released in two months. The court also asked father some questions and allowed him to make a statement.
¶ 9 The court then heard closing arguments. The adoption agency asked the court to accept its interpretation of the relinquishment statute, which would require father to be available to personally assume legal and physical custody of the child "at the time of the hearing." Because father was incarcerated on the day of the hearing and unavailable to parent, the adoption agency asked the court to terminate his rights.
¶ 10 In his closing, father again asked the court for more time, for "a chance to get an attorney," to "find out what my rights are," and to discover "like I said, for sure if I am the father."
¶ 11 After considering the matter, the court found by clear and convincing evidence that father was the child's parent. The court agreed with the adoption agency's interpretation of the relinquishment statute and found that the law required that father be able to assume legal and physical custody of the child "at the time of the hearing." Because father was incarcerated and thus unable to *818 assume legal and physical custody of the child that day, the court granted the petition and terminated father's rights.
¶ 12 Father did not timely appeal the trial court's order terminating his parental rights and we have dismissed that portion of father's appeal. However, father filed a timely motion under C.R.C.P. 60(b) requesting relief from the judgment alleging, among other things, that the judgment terminating his rights is void because it was entered in violation of his due process right to counsel. He also requested court-appointed counsel.
¶ 13 The trial court denied father's motion. It stated that nothing in the written record or in its recollection showed that father requested counsel, but went on to analyze whether father had a constitutional right to counsel. The court concluded that due process did not require the appointment of counsel in the case. But it also found father indigent and appointed him counsel for appeal.
¶ 14 Father now appeals the court's denial of his C.R.C.P. 60(b) motion.
II. Father's Contention and the Legal Framework
¶ 15 Father contends that the trial court violated his due process rights when it failed to appoint counsel for him at the termination hearing. We agree.
¶ 16 The parental right to raise one's child is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. See Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) ; see also Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ; Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The Supreme Court has noted that "the interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
¶ 17 Because this right is fundamental, certain due process standards must be met before it may be extinguished. L.L. v. People, 10 P.3d 1271, 1276 (Colo.2000). Due process requires " 'fundamentally fair procedures.' " Id. (quoting Santosky, 455 U.S. at 754, 102 S.Ct. 1388 ); see also People in Interest of A.M.D., 648 P.2d 625, 636 (Colo.1982).
¶ 18 However, due process is flexible and calls for such procedural protections as the particular situation demands. A.M. v. A.C., 2013 CO 16, ¶ 28, 296 P.3d 1026. Because due process is situation specific, it should be viewed in the context of all the procedural protections offered to parents. Id. at ¶¶ 28-29.
¶ 19 In Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court held that the Due Process Clause of the United States Constitution does not require "the appointment of counsel in every parental termination proceeding." Id. at 31, 101 S.Ct. 2153. After reviewing its precedents on the right to appointed counsel, the Court identified a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." Id. at 26-27, 101 S.Ct. 2153 (emphasis added).
¶ 20 Accordingly, because in termination proceedings the parent's personal liberty is not at stake, the presumption against a right to appointed counsel is weighed against the sum total of the "three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." Id. at 27, 101 S.Ct. 2153. These three elements were formulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and they are now commonly referred to as the Eldridge factors.
¶ 21 In Lassiter, the Supreme Court concluded that while in some termination proceedings the Eldridge factors could be weighted in such a manner that their sum total was greater than the presumption against the right to appointed counsel, this would not always be the case.
*819 Lassiter, 452 U.S. at 31-32, 101 S.Ct. 2153. Therefore, rather than require that counsel be provided in all such cases, the Supreme Court held that the determination must be made on a case-by-case basis. Id. at 26, 101 S.Ct. 2153.
¶ 22 While adopting a case-by-case standard, the Supreme Court refused " 'to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements.' " Id. at 32, 101 S.Ct. 2153 (quoting Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ). Under Lassiter's holding, the decision whether due process requires the appointment of counsel for indigent parents in termination proceedings must be answered "in the first instance by the trial court, subject ... to appellate review." Id. at 31-32, 101 S.Ct. 2153.
¶ 23 Colorado appellate courts have followed Lassiter and adopted the Eldridge factors in examining the due process right to counsel in dependency and neglect cases and in stepparent adoption cases. C.S. v. People, 83 P.3d 627, 636-37 (Colo.2004) ; In re C.A.O., 192 P.3d 508, 510-12 (Colo.App.2008). We adopt the Eldridge factors in reviewing this termination proceeding under the relinquishment statute.
¶ 24 This matter is before us on the trial court's denial of father's motion for relief from judgment. Under C.R.C.P. 60(b)(3), the trial court may relieve a party from a final judgment if the judgment is void. A judgment entered in violation of due process is void. In re C.L.S., 252 P.3d 556, 559 (Colo.App.2011). Specifically, a judgment terminating parental rights entered in violation of a parent's due process right to counsel is void. See, e.g., In re Adoption of Rory, 80 Mass.App.Ct. 454, 954 N.E.2d 22, 26 (2011).
¶ 25 Although motions seeking relief from a judgment are generally left to the discretion of the trial court, because a judgment entered in violation of due process is either void or not, the trial court has no discretion in making this determination. C.L.S., 252 P.3d at 561. For this reason, we review the order denying father's motion de novo. Id.
III. Analysis
A. Father's Request for Counsel
¶ 26 First, we consider and reject the adoption agency's assertion that father never requested counsel.
¶ 27 The adoption agency maintains that the right to counsel must be invoked and that father never invoked the right by requesting counsel. It relies on People in Interest of A.H., 271 P.3d 1116, 1123 (Colo.App.2011), and People in Interest of T.D., 140 P.3d 205, 218 (Colo.App.2006). Those cases involve the statutory right to counsel in dependency and neglect cases. See § 19-3-202(1), C.R.S.2013. Both cases state that parents must invoke their statutory right to counsel under section 19-3-202(1).
¶ 28 Answering an undecided question in Colorado, we conclude that a request for counsel under the due process clause is not limited to a formal request using specific words. See, e.g., In re Adoption of J.D.F., 761 N.W.2d 582, 587-88 (N.D.2009) (given father's stated desire for an attorney and his inability to procure legal assistance, trial court erred by not advising him of his state constitutional right to counsel); In re Fernandez, 155 Mich.App. 108, 399 N.W.2d 459, 460-61 (1986) (given father's stated desire for counsel, his lack of funds, and his inability to freely appear before the court because of incarceration, the trial court should have considered his communications as a request for court-appointed counsel).
¶ 29 This conclusion is consistent with the statutory right to counsel. The court must advise parents of their right to counsel, both at their first appearance and when a termination motion is filed. See §§ 19-3-202(1), 19-3-602(2), C.R.S.2013; C.R.J.P. 4.2(a)(2). And, the petition in dependency and neglect and the summons must also advise parents of their right to counsel. See §§ 19-3-501(1)(c)(I)(A), 19-3-503(1), C.R.S.2013. Thus, because parents in dependency and neglect cases are advised of their right to counsel, if they choose not to request counsel, they cannot later object to their lack *820 of counsel. See People in Interest of L.A.C., 97 P.3d 363, 366-67 (Colo.App.2004) ; People in Interest of V.W., 958 P.2d 1132, 1133-34 (Colo.App.1998).
¶ 30 In contrast, when terminating parental rights through a relinquishment proceeding, the parent does not have a statutory right to counsel. Because any constitutional right to counsel is determined on a case-by-case basis, the right may not exist in every case. As a result, at the start of a case, no basis yet exists for requiring that the parent be advised of the right to counsel.
¶ 31 Here, when the court asked if father was ready to proceed, he responded, "No, I'm not. I thought I'd be out of incarceration and have an attorney, but I'm not, no." He asked to continue the hearing "[b]ecause I don't know my rights or anything concerning this child." The court did not rule on his request to continue the hearing. Instead, it heard testimony and received evidence.
¶ 32 In closing argument, father again said, "I'm asking for two months and a chance to get an attorney. I don't know my rights or anything, and like I said, for sure if I am the father because there is some kind of issue about that." He reiterated that he was "asking for two or three months to get an attorney and find out what my rights are."
¶ 33 Under these circumstances, we conclude that father sufficiently expressed his desire for the assistance of counsel. See Fernandez, 399 N.W.2d at 461. Next, we consider whether the trial court should have granted his request.
B. The Lassiter Analysis
¶ 34 Father contends that the trial court erred in failing to appoint counsel for him. Because the court's order denying his motion for relief from judgment is before us, we construe the argument to be that the court erred in concluding, under Lassiter and Eldridge, that due process did not require appointment of counsel and in not vacating its prior order terminating his rights. We agree.
¶ 35 In reviewing a parent's due process right to counsel, the court must consider (1) whether the parent's interest is an extremely important one; (2) whether the state shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and has a possibly stronger interest in informal procedures; and (3) whether the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights unacceptably high. C.S., 83 P.3d at 636. After considering these three factors, we conclude that due process requires the appointment of counsel when the parent's interests are at their strongest, the state's interests are at their weakest, and the risks of error are at their peak. Id. at 636-37.
¶ 36 To assess the risk of an erroneous decision, the court in Lassiter listed several factors that bear on the question. They include (1) the possibility of self-incrimination; (2) whether expert testimony is presented at the hearing; (3) whether the decision involves complex points of law; and (4) the sufficiency of the evidence, taken as a whole. Lassiter, 452 U.S. at 32-33, 101 S.Ct. 2153.
¶ 37 Here, the court concluded that father's interest was an important one, the state's interest was not weak, and, given the undisputed fact that father was incarcerated, the risk of error was low.
¶ 38 We agree with the trial court that father's interest was an important one. See Santosky, 455 U.S. at 758, 102 S.Ct. 1388 ("In parental rights termination proceedings, the private interest affected is commanding."). We also agree that the state's interest was not weak. See C.A.O., 192 P.3d at 511. Because these factors counterbalance each other, we consider the risk of error determinative. And on the particular facts presented, we conclude that the risk of error in this case was extremely high. For this reason, we conclude that father had a due process right to counsel.
1. Lack of Procedural Protections
¶ 39 Parents seeking to avoid termination of their rights under the relinquishment statute enjoy few procedural protections. But *821 more importantly, the procedures actually followed in this case did not ensure fundamental fairness without the assistance of counsel.
¶ 40 A relinquishment involves only three procedural safeguards: the right to notice of the proceeding, the right to appear and contest the proceeding at a hearing, and the court's application of a clear and convincing burden of proof. § 19-5-105(3) ; A.M.D., 648 P.2d at 631. In contrast, parents in termination proceedings in dependency and neglect cases enjoy greater procedural protections.
¶ 41 In A.M. , the Colorado Supreme Court considered whether foster parent participation in termination proceedings through a dependency and neglect case violated a parent's due process rights. The court did so in the context of all the procedural protections afforded parents in dependency and neglect termination proceedings. A.M. , ¶ 28. The court identified eleven separate procedural protections for parents including the right to notice of the allegations supporting the termination motion, the right to cross-examine witnesses, and the statutory right to counsel. Id. at ¶ 29.
¶ 42 The court also analyzed the Eldridge factors and concluded that, taken together, they did not support limiting foster parent participation because, although the parent's interest was significant, information provided by the foster parent reduced the risk of error and furthered the state's interest to maintain a fair hearing and protect children's welfare. Id. at ¶ 37. It explained that full participation by foster parents does not impair parents' due process rights because the Eldridge analysis in the context of the numerous procedural protections provided to parents in dependency and neglect termination proceedings preserves the fundamental fairness of the proceedings. Id. at ¶ 38.
¶ 43 But here, the procedural protections did not adequately ensure fundamentally fair procedures in the absence of counsel. The relinquishment statutory scheme provides one hearing to father. § 19-5-105(3). Before the hearing, neither the petition to terminate his rights, nor the notice to terminate his rights, nor the summons, advised father of the allegation to be proven at the hearing: that he cannot personally assume legal and physical custody of the child, taking into account the child's age, needs, and individual circumstances. See id.
¶ 44 Consistent with this lack of notice, at the hearing father repeatedly told the court that he was not prepared to proceed and he did not know his rights. Yet the court neither offered an advisement or other explanation of the proceedings, nor inquired as to his preparation. Because father was never advised of the allegations central to the hearing, his ability to prepare to rebut those allegations is in substantial doubt. In addition, mother's testimony regarding paternity and the child's best interests was taken without father or his representative being present and without explanation by the court for this course of action. Thus, father was not provided any opportunity to cross-examine the witness. See Dalton v. People, 146 Colo. 15, 18, 360 P.2d 113, 114 (1961) (denial of father's due process rights rendered paternity judgment void where court entered judgment ex parte and without notice to father). Also, because he had not been present to hear the evidence, he was unaware of the evidence he needed to rebut. See Aspen Props. Co. v. Preble, 780 P.2d 57, 58 (Colo.App.1989) (civil litigant's right to due process of law includes right to cross-examine witnesses and an opportunity for rebuttal).
2. Complexity of the Legal Issues
¶ 45 While we agree that the factual issues were not particularly difficult, we also conclude that assistance of counsel was required because of the difficult legal issues presented. Because the case potentially turned on how the court resolved these issues, the risk of error was high. Two issues of statutory interpretation were before the trial court.
¶ 46 The first was whether father was entitled to a paternity test. Generally, in any action in which paternity is at issue, the court is required to order genetic testing at the request of any party. § 13-25-126, C.R.S.2013. But, during the ex parte portion of the hearing, the adoption agency's counsel engaged in a colloquy with the court and advanced *822 a reading of section 19-5-105(3) which required paternity testing only if the court first finds that father was able to take legal and physical custody of the child.[1]
¶ 47 When father was writted in for the hearing, he said that he was not sure if the child was his. The adoption agency responded that a paternity test was not required and again discussed the statute with the court. The court did not engage father in the discussion of the meaning of the statute and did not ask father for a response to counsel's interpretation.
¶ 48 Then the court implicitly adopted counsel's interpretation by not ordering genetic testing. Instead, it found that father was the child's parent based on the testimony of mother and father's corroborating testimony that he had been involved in a sexual relationship with mother. Whether a paternity test could have determined that he was not the biological father is not dispositive of the due process inquiry. Rather, the time required to perform a paternity test could have put father in a better position for the hearing, given his testimony that he would be released in two months.
¶ 49 The second statutory interpretation issue before the court was the time frame in which a parent must be ready to take legal and physical custody of the child. The adoption agency argued that the statute meant that the parent must be able to take custody of the child "at the time of the hearing."[2] Counsel acknowledged that the word "promptly" had been removed from the statute after the only appellate case interpreting the statute was decided. See In re Catholic Charities & Cmty. Servs., 942 P.2d 1380 (Colo.App.1997) ; see also Ch. 228, sec. 3, § 19-5-105, 1997 Colo. Sess. Laws 1160. Even so, he argued that the removal of the word "promptly" made clear the statute means the parent must be able to care for the child "on the day of the hearing." Again, father was not asked to respond to counsel's interpretation of the statute.
¶ 50 The court adopted counsel's interpretation and read "at the time of the hearing" into the statute. With the assistance of counsel, father could have advocated for an interpretation of the statute that involved a more expansive time frame. Because father testified that he would be released in two months, a more expansive view of the time requirement to be able to care for the child could have impacted the outcome of the case. Again, we conclude that the absence of counsel on this issue injected another risk of error into the proceedings.
IV. Conclusion
¶ 51 Given the lack of procedural protections in the way the proceedings below transpired and the complexity of the legal issues presented to the court, the risk of an erroneous decision for the uncounseled father in this case was high. In the absence of counsel for father, we conclude that the proceeding was fundamentally unfair. Thus, we further determine that father's due process right to counsel was violated, and the court erred in denying father's motion under C.R.C.P. 60(b)(3). See C.L.S., 252 P.3d at 561.[3]
¶ 52 We reverse the court's order denying father's motion, vacate the judgment terminating his parent-child legal relationship, and remand the case. On remand, the trial court shall determine if father remains indigent, and, if so, shall appoint trial counsel for him. Regardless of whether it appoints counsel, it shall conduct a new hearing.
JUDGE WEBB and JUDGE BOORAS concur.

We do not comment on the persuasiveness of counsel's interpretation. Rather, our purpose in stating the issue is to illustrate the complexity of the legal issues.

Again, we do not comment on the persuasiveness of counsel's interpretation.

Because we have dismissed that portion of father's untimely appeal related to the original termination judgment, we do not address father's remaining contentions.