COLORADO COURT OF APPEALS
 2016 COA 38
 
 

Court of Appeals Nos. 14CA2454, 14CA2455, 14CA2456 & 14CA1457 
Alamosa County District Court Nos. 13JV56, 14JR17, 14JR18 & 14JR19 
Honorable Amanda Kay Pearson, Judge

The People of the State of Colorado, 
Petitioner-Appellee, 
In the Interest of E.M., L.M., and E.J.M., Children, 
and Concerning L.G.M., 
Respondent-Appellant.

JUDGMENTS DISMISSED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS
Division A
Opinion by JUDGE ASHBY
Loeb, C.J., and Furman, J., concur
Announced March 10, 2016

Jason T. Kelly, County Attorney, Alamosa, Colorado, for Petitioner-Appellee Raymond K. Miller, Guardian Ad Litum
Zerbi Law Firm, PC, Merida I. Zerbi, Monte Vista, Colorado, for Respondent-Appellant
¶1       This case, which comprises four consolidated appeals, requires us to examine the interrelationship between two articles of the Children’s Code. Article three, sections 19-3-100.5 to -703, C.R.S. 2015, relates to dependency and neglect proceedings. Article five, sections 19-5-100.2 to -403, C.R.S. 2015, relates to relinquishment and adoption proceedings. As an issue of first impression, we address whether a county department of social services may move to involuntarily terminate a parent’s parental rights in a relinquishment case under article five when the children are the subject of a pending dependency and neglect case under article three.1 We conclude it cannot.
I. Background
¶2       This proceeding began under article three of the Children’s
Code when the Alamosa County Department of Human Services (department) filed a petition alleging that the children, E.M., L.M., and E.J.M., were dependent or neglected because mother was addicted to pain pills and father, L.G.M. (the appellant), was incarcerated. See § 19-3-502, C.R.S. 2015. The court granted temporary custody of the children to the department after a shelter hearing, and the department placed the children with relatives. See §§ 19-3-403, 19-3-404, C.R.S. 2015.
¶3       Thereafter, both father and mother admitted the petition’s
allegations, and the court adjudicated the children dependent and neglected. See § 19-3-505, C.R.S. 2015. The court adopted a treatment plan for mother that required her to participate in family drug court. § 19-3-508(1), C.R.S. 2015. As to father, the court found that he did not agree with his proposed treatment plan and, since he was incarcerated and unwilling to discuss a proposed treatment plan, the court determined that no appropriate treatment plan could be devised for him. The court made no finding that because of the length of father’s incarceration no appropriate treatment plan could be devised. See §§ 19-3-508(1)(e)(I), 19-3-604(1)(b)(III), C.R.S. 2015. However, no dispositional order for father was entered at that time because no party moved to terminate father’s parental rights. See § 19-3-508(1); see also People in Interest of M.S., 2012 COA 211, ¶¶2-4 ("When the proposed disposition is termination of the parent-child legal relationship, the termination hearing serves as the dispositional hearing.") (emphasis added).
¶4       A year after the case was opened, the guardian ad litem (GAL)
moved to terminate the parent-child legal relationship between each parent and the children under article three, section 19-3-604, C.R.S. 2015, and cited two of the three statutory grounds for termination. See § 19-3-602, C.R.S. 2015. First, the motion asserted that the parents had abandoned the children. See § 19-3-604(1)(a). Second, and notwithstanding the court’s prior finding that a treatment plan could not be devised for father, the motion alleged that an appropriate treatment plan approved by the court had not been complied with by the parents or had not been successful, the parents were unfit, and their conduct or condition was unlikely to change within a reasonable time. See§ 19-3-604(1)(c). The motion did not cite the court’s determination that no appropriate treatment plan could be devised to address father’s unfitness as a ground for terminating his parental rights. See § 19-3-604(1)(b). 
¶5       At the hearing on the GAL’s termination motion, mother decided to relinquish her parental rights.[2] See § 19-5-103, C.R.S. 2015. Once mother made this decision, the department believed that the relinquishment statute compelled it to move to terminate father’s parental rights in a relinquishment case under article five of the Children’s Code. See § 19-5-105(1), C.R.S. 2015 ("If one parent relinquishes . . . , the agency or person having custody of the child shall file a petition in the juvenile court to terminate the parent-child legal relationship of the other parent . . . ."). In three separate relinquishment cases (one for each child), the department filed petitions to terminate the parent-child legal relationship between father and each child under the relinquishment statute, section 19-5-105. But, the dependency and neglect case remained open and pending, although no action was taken on the GAL’s article three termination motion. With the court’s approval, the GAL and the department pursued termination of father’s parental rights entirely through the relinquishment cases.
¶6       After a hearing, the court terminated father’s parental rights
under the relinquishment statute. And, at the same time, the court also issued an order establishing a new permanency planning goal and setting a review hearing in the dependency and neglect case. See § 19-3-702, C.R.S. 2015.
¶7       Father appeals the three judgments terminating his parent-child legal relationship with the children in the relinquishment cases. We reverse these judgments and remand for further proceedings in the dependency and neglect case.
II. Discussion
¶8       Father contends that the court erred in interpreting the
Children’s Code to permit the department to file its termination motion in an article five (adoption and relinquishment) proceeding rather than proceeding under article three (dependency and neglect).
¶9       We agree with father that the Children’s Code does not permit
the involuntary termination of parental rights through a relinquishment case when the parents and child are parties to an open dependency and neglect case. Thus, we hold that, under the Children’s Code, the dependency and neglect court maintains continuing, exclusive jurisdiction over the status of a child who is alleged to be dependent and neglected until the child reaches majority or until the court’s jurisdiction over the case is otherwise terminated. As a result, we conclude that the trial court erred in terminating father’s parental rights under the relinquishment statute. We reach this conclusion for three reasons.
A. Article Three Must Govern Dependent and Neglected Children Because the Legislative Declarations Illustrate Distinct Purposes Behind Articles Three and Five 
¶10       First, we begin by examining the purposes of article three and article five, which are set forth in the legislative declarations. Close examination of these purposes reveals that article three proceedings in dependency and neglect "are distinct in purpose, policy, and procedure" from relinquishment proceedings under article five. See In re B.D.G., 881 P.2d 375, 377 (Colo. App. 1993). We conclude that these separate and distinct purposes are not well served when an attempt is made to intertwine them. 
¶11       Article three actions in dependency and neglect are initiated exclusively by the state through a county human services department, and the purpose of the proceeding is not to adjudicate the parents’ rights, but to protect the safety of the children and preserve family ties if possible. L.G. v. People, 890 P.2d 647, 655 (Colo. 1995); see also § 19-1-102(1), C.R.S. 2015. In this context, the General Assembly has declared "that the stability and preservation of the families of this state and the safety and protection of children are matters of statewide concern." § 19-3-100.5(1). In support of these goals, an appropriate treatment plan "reasonably calculated to render [a] parent fit to provide adequate parenting" is to be adopted except in limited and exceptional circumstances. See §§ 19-1-103(10), 19-3-508(1)(e)(I), C.R.S. 2015. And it has also noted that federal law "requires that each state make a commitment to make ‘reasonable efforts’ to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate." Id. Indeed, rehabilitative services provided through a dependency and neglect proceeding are designed to accomplish these purposes. § 19-3-208(2)(a)(I), (IV), C.R.S. 2015.
¶12       A dependency and neglect case focuses on securing safety and protection for children through state intervention by correcting, when possible, the problems that endanger them so that they can remain in (or return to) their homes. Unlike the informality and swiftness of relinquishment, parents are afforded "significant protections" when facing termination of the parent-child legal relationship in a dependency and neglect case. See A.M. v. A.C., 2013 CO 16, ¶¶28-29 (identifying eleven different procedural protections provided to parents including, among others, the right to counsel, the right to an expert of an indigent parent’s choosing, and the right to have the court consider and eliminate less drastic alternatives to termination).
¶13       In contrast, under article five, the General Assembly has declared that "parental relinquishment and adoption of children are important and necessary options to facilitate the permanent placement of minor children if the birth parents are unable or unwilling to provide proper parental care." § 19-5-100.2(1). Relinquishment and adoption cases commence not by the state acting to protect the child but by one parent’s decision to give up his or her parental rights. The express purpose of the relinquishment and adoption scheme is to promote the integrity and finality of adoption to ensure that children whose parents are unable or unwilling to provide proper parental care will be raised in stable, loving, and permanent families. In re D.S.L., 18 P.3d 856, 858 (Colo. App. 2001).
¶14       When one parent decides to voluntarily give up parental rights and the other parent is unable or unwilling to provide proper parental care, a relinquishment and adoption case focuses on finding a good home for the child. And, to achieve this purpose, adoption and relinquishment proceedings are informal and streamlined. See In re R.A.M., 2014 COA 68, ¶40 (noting that "[a] relinquishment involves only three procedural safeguards: the right to notice of the proceeding, the right to appear and contest the proceeding at a hearing, and the court’s application of a clear and convincing burden of proof"). 
¶15       In defending against the termination motion, father argued that procedural weaknesses — specifically the court’s erroneous finding that a treatment plan could not be devised for him because he was uncooperative — prevented the department from being able to successfully terminate his parental rights under article three (dependency and neglect), so the department violated his due process rights in attempting to terminate his rights under article five (relinquishment and adoption). The trial court found that proceeding under article five sufficiently protected father’s rights and "if [the court’s finding that an appropriate treatment plan could not be devised for father] was an erroneous decision, there was no impact on [father]." We disagree.
¶16       The decision not to provide a parent with a treatment plan may be made only on specific grounds. See § 19-3-508(1)(e)(I) ("[T]he court may find that an appropriate treatment plan cannot be devised as to a particular respondent because the child has been abandoned as set forth in section 19-3-604(1)(a) and the parents cannot be located, or because the child has been adjudicated as neglected or dependent based upon section 19-3-102(2), or due to the unfitness of the parents as set forth in section 19-3-604(1)(b)."); People in Interest of Z.P.S., 2016 CA 20, ¶¶16-17. If this decision is erroneously made, it cannot be said to have no negative impact. Treatment plans "serve an important role in preserving the parent-child relationship." K.D. v. People, 139 P.3d 695, 700 (Colo. 2006); see also A.M., ¶29 (listing the opportunity to participate in a treatment plan as a procedural protection for parents facing termination of their parental rights). For this reason, the decision not to provide a parent with a treatment plan directly impacts the parent. See People in Interest of D.R.W., 91 P.3d 453, 460 (Colo. App. 2004) (concluding that termination of father’s rights must be reversed because the failure to hold a dispositional hearing after the adjudication deprived father of the opportunity to participate in treatment for twenty months).
¶17       Because treatment plans play an important role in preserving parental rights, we disagree with the trial court that any erroneous decision at the dispositional stage had no negative impact on father. We also cannot conclude that the informal and streamlined procedures of article five (relinquishment and adoption) adequately substituted for the "significant protections" under article three. Colorado’s appellate courts have consistently disapproved of using one part of the Children’s Code as an end run around another part of the Code, even when attempting to serve the child’s best interests by securing his or her adoption. See D.S.L., 18 P.3d at 857-58 (holding that mother was not authorized to move to terminate father’s rights under section 19-5-105 when she did not consent to relinquishing her own rights and the sole purpose appeared to be to achieve a possible stepparent adoption); People in Interest of S.S.T., 38 Colo. App. 110, 113, 553 P.2d 82, 86 (1976) (concluding that an action in dependency and neglect may not be used as a means of making a child available for adoption by a stepparent), limited on other grounds by In re R.H.N., 710 P.2d 482, 486 n.3 (Colo. 1985); see also A.M., ¶26 (In article three termination hearings, "[j]uvenile courts act as gatekeepers so that . . . the termination hearing ought not . . . devolve into a contested custody hearing.").
B. Once a Child is Adjudicated, the Dependency and Neglect Court Maintains Continuing, Exclusive Jurisdiction
¶18       The second reason for our holding turns on an examination of the statutes the legislature enacted to advance its purposes. In examining the statutes, we conclude that the dependency and neglect court maintains continuing, exclusive jurisdiction over any child who has been adjudicated dependent and neglected.
¶19       Statutory interpretation is a legal issue that we review de novo. People in Interest of C.L.S., 313 P.3d 662, 665-66 (Colo. App. 2011). The sections of the Children’s Code must be read together to effectuate the legislative intent and to give consistent, harmonious, and sensible effect to all their parts. See R.E.N. v. City of Colorado Springs, 823 P.2d 1359, 1364 n.5 (Colo. 1992).
¶20       Section 19-1-104(1)(b), C.R.S. 2015, gives the juvenile court 
exclusive jurisdiction in proceedings concerning any child who is neglected or dependent. Most importantly, section 19-3-205(1), C.R.S. 2015, states that "the jurisdiction of the court over any child adjudicated as neglected or dependent shall continue until he becomes twenty-one years of age unless earlier terminated by court order." Thus, the juvenile court presiding over the dependency and neglect case maintains continuing, exclusive jurisdiction over the adjudicated child, and in most circumstances his or her parents, as long as the case continues. 
¶21       The dependency and neglect court’s exclusive jurisdiction over an alleged dependent and neglected child is specifically recognized in the jurisdictional statute of the Children’s Code. For example, when a domestic relations or other civil district court has a case involving a dependent or neglected child, section 19-1-104(4)(a) requires the district court to "certify the question of legal custody to the juvenile court."
¶22       The supreme court illustrated this point in City & County of Denver v. District Court, 675 P.2d 312 (Colo. 1984). In that case, the social services department filed a petition in juvenile court alleging that the child, who was in the mother’s care at the time, was dependent or neglected. Id. at 313. The juvenile court awarded temporary custody to the department of human services. Id. Father filed a petition for habeas corpus in district court seeking the child’s immediate release to his custody. Id. at 314. The district court ordered the department of human services to release the child to father. Id. The department of human services appealed to the supreme court under C.A.R. 21(a), asserting that the juvenile court had exclusive continuing jurisdiction over the matter and the district court had no authority to issue a writ of habeas corpus involving the child. Id. at 313-14. The supreme court accepted the case, agreed with the department of human services, and concluded that the department’s filing of a valid dependency or neglect petition conferred continuous exclusive jurisdiction on the juvenile court to determine the status of the child. Id. at 315.
¶23       Subsections five and six of section 19-1-104 also affirm the
exclusive authority of the dependency and neglect court to handle matters involving a dependent and neglected child. See § 19-1-104(5) (allowing the juvenile court to take jurisdiction from the district court of a pending custody or allocation of parental responsibilities case when the child is dependent and neglected); § 19-1-104(6) (allowing a party to petition the dependency and neglect court to enter an order allocating parental responsibilities and addressing parenting time and child support for a dependent and neglected child, rather than initiating a separate action under title fourteen (domestic relations) or articles four (Uniform Parentage Act) or six (support proceedings) of the Children’s Code). 
¶24       Although we recognize that dependency and neglect and relinquishment are both matters heard exclusively by the juvenile court, see § 19-1-104(1)(b), (d), the dependency and neglect case is that which controls the status of an alleged dependent and neglected child. See § 19-3-205(1); City & Cty. of Denver, 675 P.2d at 314. In sum, when a child is dependent or neglected, matters related to that child’s status must be addressed through the open dependency and neglect case.
C. In a Dependency and Neglect Case, the Only Authorized Means of Terminating Parental Rights is Through the Parent-Child Legal Relationship Termination Act of 1987
¶25       Having established that the dependency and neglect court, through the dependency and neglect case, maintains continuing exclusive jurisdiction over the child, we now turn to the third reason supporting our holding: under article three, a parent’s parental rights may be terminated only through the Parent-Child Legal Relationship Termination Act of 1987 (Act), sections 19-3-601 to -612, C.R.S. 2015.
¶26       The child’s adjudication vests the dependency and neglect court with extensive and flexible dispositional remedies, including placing the child in the legal custody of his or her parents, relatives, or other suitable persons, with or without protective supervision; giving legal custody of the child to a county department of human services for placement in a foster home or child care facility; ordering an examination of the child, special care for the child, or placement in a facility to provide special care to the child; and terminating parental rights. People in Interest of A.M.D., 648 P.2d 625, 639 (Colo. 1982); see also § 19-3-508(1)(a)-(e) (listing dispositional remedies which the court may consider, but to which the court is not limited).
¶27       In examining the statutes that make up article three, we find no reference to terminating parental rights to a dependent and neglected child under article five. Likewise, in examining article five’s termination statute, section 19-5-101, C.R.S. 2015, we find no reference to terminating parental rights to a dependent and neglected child. Instead, under the statutory scheme, the only authorized means of terminating parental rights in a dependency and neglect case is through the Act. See § 19-3-508(1) ("When the proposed disposition is termination of the parent-child legal relationship, the court may continue the dispositional hearing to the earliest available date for a hearing in accordance with the provisions of paragraph (a) of subsection (3) of this section and part 6 of this article."); § 19-3-508(3)(a) ("The court may enter a decree terminating the parent-child legal relationship of one or both parents pursuant to part 6 of this article."); see also § 19-3-702(2.5) (In an expedited permanency planning case, "the court may order the county department of social services to show cause why it should not file a motion to terminate the parent-child legal relationship pursuant to part 6 of this article."); § 19-3-702(5)(a) (In order to enable the child to obtain a permanent home, "the court may order the county department of social services to show cause why it should not file a motion to terminate the parent-child legal relationship pursuant to part 6 of this article.").
¶28       The department argues that it was required to terminate father’s parental rights under article five because the relinquishment statute states that once one parent decides to relinquish, then it, as "the agency or person having custody of the child," was required to move to terminate father’s rights in the relinquishment case. § 19-5-105(1). But we think it worth noting that the department gained legal custody of the children through the dependency and neglect case using the state’s power to act in parens patriae to protect the children. §§ 19-3-403, 19-3-404.
¶29       Legal custody is "the right to the care, custody, and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, and discipline for a child, and, in an emergency, to authorize surgery or other extraordinary care." § 19-1-103(73)(a), C.R.S. 2015. Legal custody does not include the right to consent to adoption. Compare id., with § 19-1-103(60) (defining guardianship). In a dependency and neglect case, the authority to consent to an adoption comes after entry of the decree terminating parental rights under the Act, when the court may then vest the department or other child placement agency with legal custody and guardianship of the child. § 19-3-508(3)(b)(I). Guardianship, unlike legal custody, vests its holder with the authority to make major decisions for the child, including the authority to consent to the child’s adoption. § 19-1-103(73)(a). Thus, under article three, the court makes a dependent and neglected child available for adoption by terminating parental rights under the Act and granting guardianship. § 19-3-508(1), (3)(a), (3)(b)(I).
¶30       In conclusion, when a child is dependent or neglected, matters related to that child’s status must be addressed through the dependency and neglect case. Because the parent-child legal relationship was not terminated under the Act, the judgment terminating father’s parental rights must be reversed.
¶31       III. Dismissal of the Dependency and Neglect Portion of the Appeal<
¶32       Finally, we note that, in addition to appealing the three relinquishment cases, father filed a notice of appeal in the dependency and neglect case. On appeal, father challenges the trial court’s failure to consider deficiencies in the dependency and neglect case, which he alleges prejudiced him in the relinquishment cases. We decline to consider the alleged irregularities of the dependency and neglect case and dismiss this portion of father’s appeal because we conclude that there is no final order in the dependency and neglect case which would trigger our review. 
¶33       Because father did not attach the orders being appealed to the four notices of appeal he filed, we ordered him to provide us with copies of the orders being appealed. The order that father provided in the dependency and neglect case states that, as a result of the relinquishment cases, the children are now available for adoption. It also changes the permanency plan to adoption and sets a review hearing. But this order does not meet the jurisdictional requirements for our review.
¶34       Under C.A.R. 1(a)(1), this court has jurisdiction over final judgments of any juvenile court. See also § 13-4-102(1), C.R.S. 2015. Section 19-1-109(2), C.R.S. 2015, defines the kinds of orders or judgments that are final and appealable in the Children’s Code. An order terminating the parent-child legal relationship is final and appealable. See § 19-1-109(2)(b). As a result, the orders terminating parental rights in the relinquishment cases are appealable. But in the dependency and neglect case, there is no order terminating parental rights.
¶35       Further, an order decreeing a child dependent or neglected is appealable after entry of a disposition. See § 19-1-109(2)(c). Here, the court found that no appropriate treatment plan could be devised for father, but did not otherwise enter a disposition under section 19-3-508(1). The court did not approve a treatment plan for father, but it also did not adopt a proposed disposition of terminating father’s parent-child legal relationship. See§ 19-3-508(1) ("When the [dispositional] decree does not terminate the parent-child legal relationship, the court shall approve an appropriate treatment plan."); see also § 19-3-508(1)(e)(I) ("Except where the proposed disposition is termination of the parent-child legal relationship, the court shall approve an appropriate treatment plan.").
¶36       Because there has been no disposition or termination in the dependency and neglect case, there is no appealable order subject to our review. See M.S., ¶1.
IV. Conclusion
¶37       We reverse the termination judgments in father’s three relinquishment cases. We remand the case to the trial court to vacate the termination orders entered as to father in the relinquishment cases and to dismiss those cases.[3]
¶38       We dismiss that portion of the appeal related to the dependency and neglect case because it is not ripe for our review. The court is directed to proceed in the dependency and neglect case and, under section 19-3-505(7)(b), set a dispositional hearing and conduct further proceedings, as appropriate, in the dependency and neglect case.
¶39 Because we have resolved the appeal based on interpreting the Children’s Code, we need not address father’s other contentions on appeal.
CHIEF JUDGE LOEB and JUDGE FURMAN concur.

[1] Because the issue is not before us, we express no opinion on whether a parent may voluntarily relinquish his or her parental rights in a dependency and neglect case under article three.
[2] We do not have the transcript of mother’s portion of the termination hearing. As a result, we have no record explaining why mother decided to give up her parental rights by filing a relinquishment petition instead of by confessing the GAL’s termination motion. Also, mother has not appealed the termination of her parental rights and we do not have before us the record for the relinquishment cases pertaining to her, which were filed separately.
[3] Because we do not have mother’s cases before us, we leave it to the trial court to determine what, if any, further action must be taken as to her relinquishment and dependency and neglect cases.